UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE ST. BERNARD PARISH
SCHOOL BOARD
*Petitioner,*

CIVIL ACTION NO.

**VERSUS**

JUDGE

THE BOARD OF COMMISSIONERS OF
THE PORT OF NEW ORLEANS
*Respondent*

MAGISTRATE JUDGE

## NOTICE OF REMOVAL

TO: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

**NOW INTO COURT**, through undersigned counsel, comes Defendant, The Board of Commissioners of the Port of New Orleans (the "Port"), which, without waiving and specifically reserving all rights, defenses, objections, and exceptions, hereby removes this action pursuant to 28 U.S.C. §§ 1441 and 1446 from the Thirty-Fourth Judicial District for the Parish of St. Bernard, State of Louisiana, to the United States District Court for the Eastern District of Louisiana. This action may be removed because the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over the subject matter of this dispute. In support of this Notice of Removal, Defendant represents the following:

## PROCEDURAL BACKGROUND

1. On July 8, 2024, Plaintiff, The St. Bernard Parish School Board ("Plaintiff" or the "School Board"), filed a *Petition for a Preliminary and Permanent Injunction* in the Thirty-Fourth Judicial District for the Parish of St. Bernard, State of Louisiana, Docket No. 24-0892 (the "Petition"), seeking, *inter alia*, to stop all construction and "construction-related activities," which,

1

by its very terms would include those activities under the jurisdiction of the United States Army Corps of Engineers ("USACE"), including, for example, permit MVN-2021-00270-EG issued to the Port by the USACE on March 13, 2023, and subsequently modified by the USACE on February 14, 2024.[1]  These permits, in addition to pending applications for permits under Section 10 of the Rivers and Harbors Act and section 404 of the Clean Water Act, govern exclusively federal concerns and authorize the Port's activities pursuant to those federal laws and regulations.  The School Board's suit seeks to circumvent both the federal forum and federal process under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*  Accordingly, this Court is the proper forum to address these federal questions.

2.     On July 26, 2024, the Port was served with a citation and a copy of the Petition. Removal is timely because the Notice of Removal is being filed within thirty (30) days of Defendant having been served with the initial pleading. 28 U.S.C. § 1446(b)(1).

3.     True and correct copies of Plaintiff's Petition and all other materials served with the Petition and filed or issued in the state court action are attached hereto as **Exhibit A**.  28 U.S.C. § 1446(a).

4.     Pursuant to 28 U.S.C. § 1441(a), venue is proper in this Court because it is the United States District Court embracing the Parish of St. Bernard, the parish in which the state court action was instituted.

5.     Pursuant to 28 U.S.C. § 1446(d), a notice with a copy of this Notice of Removal is also being filed with the Clerk of Court for the Thirty-Fourth Judicial District for the Parish of St. Bernard, and served upon the Plaintiff on the same day this Notice of Removal is filed.

---

[1] Copies of these permits are attached hereto as **Exhibits B** and **C**.

**BASIS FOR REMOVAL**

6. Removal is proper because this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the Constitution, laws, or treaties of the United States, including, but not limited to, the APA, 5 U.S.C. § 702. Additionally, pursuant to 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over any state law claims, that do not independently satisfy the requirements of 28 U.S.C. § 1331.

7. Federal question jurisdiction exists where the plaintiff's claim, though pled under state law, "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods. Inc. v. Darue Eng'r & Mfg.*, 545 U.S. 308, 314 (2005); *Board of Comm'rs. v. Tennessee Gas Pipeline Co.*, 850 F.3d 714, 721-722 (5th Cir. 2017) ("*Tennessee Gas*") (federal jurisdiction exists where "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is 'substantial' and (4) federal jurisdiction will not disturb the balance of federal and state responsibilities"); *see also Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13 (1983) ("Even though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties.").

8. The Petition directly raises issues of federal preemption and require resolution of substantial questions of federal law, including, but not limited to, the Port's authorizations under existing USACE permits and the ongoing exclusive and statutorily-mandated federal permitting process. Plaintiff, through craft pleading, is attempting to completely enjoin the Port from

3

continuing under its existing USACE permits and proceeding with its federal permit applications, without adhering to the statutorily-mandated process for challenging such permits and permit applications.

9. The Fifth Circuit has held that where the remedy sought by the plaintiff cannot be granted without the application of federal law, the complaint raises a federal question, despite the plaintiff's effort to proceed exclusively under state law by artful crafting of the state court action. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001); *see also Gillis v. Louisiana*, 294 F.3d 755, 760 (5th Cir. 2002) (concluding that plaintiff was implicitly proceeding under federal law based on relief sought).

10. Federal jurisdiction does not depend on what a plaintiff may or may not have artfully alleged; rather, it rests squarely on whether the theories of liability and/or the remedy sought implicate federal issues. *See, e.g., Hughes v. Chevron Phillips Chem. Co.*, 478 F.App'x. 167, 171 (5th Cir. 2012). For federal removal jurisdiction purposes, this Court may not take Plaintiff's allegations solely at face value, and must instead undertake a careful examination of the facts and legal theories giving rise to those claims. *See, e.g., Frank v. Bear Stearns & Co.,* 128 F.3d 919, 922 (5th Cir. 1997) ("A federal court may find that a plaintiff's claims arise under federal law even though the plaintiff has not characterized them as federal claims."); *Hawkins v. Nat'l Ass'n. of Sec. Dealers Inc.,* 149 F.3d 330, 332 (5th Cir. 1998) (finding federal question jurisdiction where "[plaintiff's] claims . . . , though carefully articulated in terms of state law, [were] actions at law seeking to enforce liabilities or duties created by federal securities laws").

11. In *Tennessee Gas*, the Fifth Circuit held the plaintiff's state-law negligence and nuisance claims relied on standards and duties of care arising from federal law,[2] and those federal

---

[2] Specifically, in *Tennessee Gas*, the dredging and maintenance activities at issue were governed by a longstanding and extensive regulatory framework under both federal and state law and this regulatory framework

4

standards created the federal-question jurisdiction for removal purposes. *Tennessee Gas*, 850 F.3d 714, 722-23. The Fifth Circuit determined that "[t]he implications for the federal regulatory scheme of the sort of holding that [Plaintiff] seeks would be significant, and thus the issues are substantial." *Id.* at 724; *see also Board of Comm'rs. of the Southeast La. Flood Prot. Authority-East v. Tenn. Gas Pipeline Co., LLC*, 29 F. Supp. 3d 808, 862 (E.D. La. 2014) ("While Plaintiff may not be expressly challenging a specific action of a federal agency, the breadth of Plaintiff's claims amounts to a collateral attack on an entire regulatory scheme.").

12. Similarly, here, Plaintiff seeks to cloak in Louisiana nuisance law exclusively federal questions – specifically the Port's right to act on its property in reliance on validly-issued USACE permits and to continue to seek these permits as required by federal law. Importantly, Plaintiff does not allege that the Port's activities are contrary to the validly-issued USACE permits under which it operates. Rather, Plaintiff asserts that the Port cannot undertake any activity, regardless of whether such activity has been permitted and is consistent with those permits. The very standard of care for the Port's current activities on its property is established by the USACE permit, and future activities will be based upon the ongoing and future USACE permitting process and the standards set forth therein. Plaintiff's claims are created by, or necessarily require the resolution of disputed issues of, federal laws and regulations, including, but not limited to, the Clean Air Act, the Clean Water Act, the River and Harbors Act, and the Administrative Procedure Act.

13. The Port is currently engaging in geotechnical testing and investigation on its property under permit MVN-2021-00270-EG. If Plaintiff believes this permit was improperly

---

established defendants' standard of care, thus satisfying federal question removal jurisdiction. *Board of Comm'rs. of the Southeast La. Flood Prot. Authority-East v. Tenn. Gas Pipeline Co., LLC*, 29 F. Supp. 3d 808, 819 (E.D. La. 2014).

issued, or that the Port is not in compliance with this permit, then the appropriate action is to seek to vacate the permit (naming the USACE as a defendant) under the APA or to bring suit against the Port in federal court to assert violations of that permit.

14. Plaintiff's Petition for a Preliminary and Permanent Injunction is yet another attempt in a concerted effort by St. Bernard Parish to prevent the lawful development of a proposed terminal by the Port along the banks of the Mississippi River, the Louisiana International Terminal or LIT. In doing so, Plaintiff seeks to preemptively halt federally permitted activities and the federally-required permit process, which preempts state law, and ultimately complains of matters governed solely by federal law and the mandated federal permitting process underway. While trying to couch its claim as a simple state law "nuisance claim" arising out alleged diesel emissions (which in and of themselves are regulated by the Clean Air Act), in reality Plaintiff's claims and requested relief go far beyond a simple "nuisance claim." Properly analyzed, it is clear that the Petition seeks to halt Defendant's ability to proceed under USACE permits or obtain additional USACE permits, thus circumventing the federally-mandated permitting process to stop the development of the Louisiana International Terminal. The true intention of this lawsuit is to collaterally attack and effectively enjoin all aspects of the construction and operation of the Louisiana International Terminal as a whole, including proceeding with the permitting process associated therewith. Federal jurisdiction exists in this case – as it must – because the Plaintiff seeks a remedy that clearly and deliberately intrudes on federal interests in multiple, independent respects.

15. A project of this magnitude must be permitted by the Secretary of the Army acting through the Chief of Engineers (*i.e.,* the U.S. Army Corps of Engineers). *See generally* Clean Water Act § 404, 33 U.S.C. § 1344; *accord* 33 C.F.R. § 320.2(f); 33 C.F.R. § 323. Such permits

(often called "Corps" permits or "404" permits) are governed by an extensive array of regulations that touch upon everything from the project need and economic benefits to the potential impacts of the project on wetlands, fish and wildlife, water quality, historical and cultural resources, scenic and recreational values, property ownership, the floodplain, and water supplies. *See* 33 C.F.R. § 320.4 (describing elements to be reviewed in all Corps permit applications); *see also* 33 C.F.R. parts 320-332 (outlining regulatory program and permitting process). The Corps must also apply and meet the "404(b)(1) Guidelines" established by EPA for review of 404 permits. *See* 40 C.F.R. part 230, 33 C.F.R. part 230. In addition to meeting its obligations under the Clean Water Act, the Corps must undertake an environmental review required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* The Corps must apply the Council for Environmental Quality regulations implementing NEPA, 40 C.F.R. §§ 1500-1508, as well as its own NEPA guidelines. *See* 33 C.F.R. § 230; 33 C.F.R. § 325 Appendix B.

16. It is undisputed that the activities currently underway at the site require USACE approval, as they involve the discharge of dredged or fill material into the waters of the United States. The USACE has given that approval to the Port. The Administrative Procedure Act provides the exclusive means for challenging the USACE's approval for these federally-regulated activities. 5 U.S.C. § 702.

17. The only harm alleged as a basis for the cause of action for a Preliminary and Permanent Injunction is that which will, in the future, emanate from diesel emissions (*see* Petition at ¶¶ 124-126). These allegations are based in citations to a news article involving the entire operation of the port in Los Angeles, CA, and such allegedly harmful diesel emissions are governed by the Clean Air Act, 42 U.S.C. §7401 *et. seq. See also* 40 C.F.R. parts 85-94 (implementing regulations for control of air emissions from different engine sources).

18. Only two (2) paragraphs of the entire 132 paragraph Petition address alleged harms that serve as the basis for the requested injunction. Notably, Plaintiff offers no allegation as to what levels of diesel emissions are present and whether these levels exceed federal regulations. In the absence of such allegations, Plaintiff appears to suggest that any diesel emissions from the Port's site would be harmful – in direct contravention of federal emission standards.

19. These vague alleged harms are illustrative of the true nature and intent of this lawsuit – to circumvent and interfere with the mandated federal permits and the federal permitting process by preemptively stopping the seeking and future issuance of permits, effectively hijacking the federal review process.[3] At bottom, this lawsuit is designed to disturb and stop an exclusively federal process, implicating various federal laws and federal interests. Stated differently, a state court does not have jurisdiction or authority to enjoin any aspect of an exclusive, federally mandated permitting process under the guise of a state law "nuisance claim."

20. More particularly, while the only current/ongoing harm alleged in Plaintiff's Petition for a Preliminary and Permanent Injunction is from future diesel emissions, the lawsuit and requested relief seeks to go far beyond that alleged harm[4] to attempt to enjoin the Port from undertaking federally-permitted activities that it must complete in order to move forward with

---

[3] There are various reasons that specialized federal agencies with expertise are vested with the authority to review proposed activity. Putting aside any defenses (*e.g.,* primary or concurrent jurisdiction, prematurity, etc.) which are not the subject of this removal, a state court cannot disrupt the legislatively mandated federal permitting process and displace such process in favor of its independent determination, which necessarily depends on whether a construction and operation of this magnitude is in accordance with federal law and federal permits.

[4] *See* Petition at Petition at ¶ 100 (generally alleging "the disruption and threat to the physical safety of the children attending W. Smith Elementary School that would be caused ***by the Louisiana International Terminal and its Operations***." (Emphasis added)); *id.* at ¶ 103 ("Upon information and belief, the construction of **the Louisiana International Terminal** will present a real and substantial threat to the health, safety, and public welfare of the students, teachers and other faculty at W. Smith, Jr. Junior Elementary School."; *id.* at ¶ 105 ("the Louisiana International Terminal [generally] in the immediate vicinity of the W. Smith Junior Elementary School property will constitute an impermissible nuisance and prohibited virtual taking."); *id.* at ¶ 127 ("[T]he inconvenience and interference likely to be caused by the construction and operation of the Louisiana International Terminal will far exceed that of any of the cases noted above.").

additional permitting for the construction or operation of the Louisiana International Terminal.[5] Indeed, the fact that Plaintiff uses the specter of *future harm* attributable to the overall operation of the Louisiana International Terminal evidences the true intent of the Petition.

21. Plaintiff complains of future, hypothetical fears that are related solely to the future construction and operation of the Louisiana International Terminal *generally*. For instance, Plaintiff makes sweeping allegations "[u]pon information and belief" relating to alleged potential threats to health, safety and public welfare as well as "inconvenience and interference likely to be caused by the construction and operation of the Louisiana International Terminal." *See, e.g.,* Petition at Petition at ¶ 100; *id.* at ¶ 103; *id.* at ¶ 127.

22. In its own words, Plaintiff seeks to "enjoin[] defendants from any construction *or construction related activities* related to the Louisiana International Terminal. . . ." and seeks "all such other general, legal and equitable relief as th[e] Court may deem appropriate." Petition at ¶ 130; *id.* at ¶ 132 (emphasis added).

23. Here, the federal permitting process mandated by Congress and acknowledged by Louisiana as exclusive and preemptive is currently underway. Indeed, the Port has already obtained one USACE permit, MVN-2021-00270-EG, to allow it to undertake the site activities of which Plaintiff complains.[6] The Petition seemingly glosses over these facts, and ignores that the Port has a USACE permit for its current activities and must continue in the federal permitting

---

[5] It should further be noted that the vast majority of the allegations set forth in the Petition (notably the pages of "factual and legal background" regarding the history of the Port and its jurisdiction), have absolutely no bearing on the harm alleged or the relief sought, and should be disregarded. *See* Petition at ¶¶ 18-88; *see also id.* at ¶ 89 (beginning, "As relevant to the instant lawsuit" seemingly admitting the irrelevance of the preceding paragraphs).

[6] To the extent that Plaintiff contends that the Port has "commenced actual construction in the immediate vicinity of the school" (Petition at ¶ 102; *see also id.* at ¶¶ 104, 122), "actual construction" of the Louisiana International Terminal can only commence with the approval of the USACE, which the Port has obtained for the current activities on the site. But, it is not any actual construction or operation that Plaintiff truly complains of; rather, it is the future construction and operation of the port facility which Plaintiff specifically alleges create the harm they say justifies injunctive relief.

process prior to undertaking construction or operation. It is only after this process is complete that a court would be able to determine whether there are/were "nuisances" based on the standard of care set forth in the federal permit(s). But the fact that Plaintiff's Petition contends that current harms exist based on the *future* construction and operation of the Louisiana International Terminal as a whole clearly establishes that Plaintiff's lawsuit seeks to stop the permitting process now, before any determination by the appropriate federal permitting authorities.

24. The applicable federal permitting process involves extensive studies, analysis by agencies with expertise, extensive public comment, and the prospect of judicial review for any future permits issued to the Port. *E.g.*, 33 C.F.R. parts 230, 320-325. This permitting authority, USACE, is vested by Congress with the exclusive authority to seek public comment and input, analyze the science, and ultimately decide if a permit is warranted, and, if so, on what conditions. It is only through this exclusive, federal process, that the standards of care and basis of duties can be established for any alleged nuisances.

25. The requested relief here circumvents the very process — mandated by Congress and acceded to by the State of Louisiana — designed to address the allegations set forth in Plaintiff's Petition. Furthermore, the framework under which to consider the legality of any activities or operations and whether future construction or operations qualify as a nuisance are dictated by this mandated federal process.

26. Additionally, assuming the allegations of the Petition relating to harm as true, such allegations implicate the Clean Water Act.

27. Ultimately, these exclusive federal permits dictate what does or does not constitute a nuisance. Stated differently, the federal permitting process that the plea for injunctive relief seeks to stop is the very process that creates the standards and the duty of care in connection with the

construction and operation of the Louisiana International Terminal.[7] *See Tennessee Gas*, 850 F.3d 714, 723 & n. 17 ("Supreme Court precedent is clear that a case arises under federal law where 'the vindication of a right under state law necessarily turn[s] on some construction of federal law,' and the [Plaintiffs' SLCRMA] claims thus cannot be resolved without a determination whether . . . federal [law] create[d] a duty of care that d[id] not otherwise exist under state law.") (quoting *Franchise Tax Bd. V. Constr. Laborers Vacation Tr. For S. Cal.*, 463 U.S. 1, 9 (1983)). Determining, in the future, whether the Louisiana International Terminal is a nuisance necessarily implicates the exclusive federal permitting process, and consideration of the various federal regulations applicable to that process and the APA.

28. Moreover, the federal-state balance under the facts as alleged in the Petition weight heavily in favor of federal question jurisdiction. Principles of comity dictate that Plaintiff not be allowed to proceed to stop an exclusive federal permitting process by artfully crafting its claims. These allegations also involve substantial federal interests that predominate over any state interest because construction and operation of the Louisiana International Terminal involve foreign and interstate maritime and other commerce, traditional federal interest.

29. The Supreme Court has found actual conflicts resulting in preemption where "under the circumstances of [a] particular case [the state] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *Crosby v. Nat'l. Foreign Trade Council*, 530 U.S. 363, 373 (2000); *Freightliner Corp. v. Myric*, 514 U.S. 280, 287 (1995); *Fid. Fed. Sav. & Loan v. de la Cuesta*, 458 U.S. 141, 153 (1982). Such implied conflict preemption occurs when "compliance with both federal and state

---

[7] The 404 Permit, if issued, will provide detailed guidance on the scope and nature of permissible activities on the Louisiana International Terminal property, as well as required remedial measures to address identified potential impacts to the community.

11

regulations is a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dec. Comm'n.*, 461 U.S. 190, 204 (1983) (internal citation and quotation marks omitted); *Hines*, 312 U.S. at 67; *see also Wells Fargo Bank of Tex. NA v. James*, 321 F. 3d 488, 491 n.3 (5th Cir. 2003) (explaining that implied conflict preemption occurs "where the state law mandates or places irresistible pressure on the subject of the regulation to violate federal law, where compliance with both regulations is physically impossible, where the state regulation frustrates or hectors the overall purpose of the federal scheme, or where the federal scheme expressly authorizes and activity which the state scheme disallows.") (citations omitted).

30. Here, the intentionally broad state law nuisance claim entirely undercuts and halts the extensive federal regulatory scheme and the Port's current USACE permit. Not only would it be "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," it would entirely undercut them.

31. Plaintiff's allegations that the Louisiana International Terminal will likely cause irreparable harm and seeking to effectively enjoin all aspects of the construction and operation of the Louisiana International Terminal , are preempted by the mandated federal permitting process. The construction and future operations of the Louisiana International Terminal are subject to an extensive array of federal laws that implicate complex questions of federal interests and federal policy in areas as diverse as public health, environmental protection, national security, transportation, navigation, maritime commerce, and interstate commerce generally, to name but a few. Indeed, numerous federal statutes and regulations expressly recognize the strong federal policy interests in those areas. Because the state court suit raises complex and interrelated issues involving many areas addressed by federal statutes and regulations, this case is one in which there

is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable,* 545 U.S. at 313-314.

WHEREFORE, Defendant prays that this Notice of Removal be deemed good and sufficient and that this matter bearing Docket No. 24-0892 in the Thirty-Fourth Judicial District for the Parish of St. Bernard, State of Louisiana, be removed from that court to the docket of this Honorable Court.

Respectfully submitted,

*/s/ L. Etienne Balart*
L. ETIENNE BALART (#24951)
MICHAEL C. DREW (#30884)
LAUREN C. MASTIO (#33077)
TAYLOR K. WIMBERLY (#38942)
Jones Walker LLP
201 St. Charles Avenue – 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8584
E-mail: ebalart@joneswalker.com
mdrew@joneswalker.com
lmastio@joneswalker.com
twimberly@joneswalker.com
Counsel for Board of Commissioners for the Port of New Orleans

AND

Harry Rosenberg (Bar #11465)
Lindsay Calhoun (Bar #35070)
Sophie M. Gray (Bar # 39422)
Phelps Dunbar LLP
365 Canal St., Suite 2000
New Orleans, LA 70130-6534
Telephone: (504) 566-1311
E-mail: harry.rosenberg@phelps.com
lindsay.calhoun@phelps.com
sophie.gray@phelps.com
Counsel for Board of Commissioners for the Port of New Orleans

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Notice of Removal was served upon all counsel of record, to-wit:

OFFICE OF THE DISTRICT ATTORNEY FOR THE THIRTY-FOURTH JUDICIAL DISTRICT
HONORABLE PERRY M. NICOSIA

DAVID C. JARRELL (Bar No. 30907)
1101 W. St. Bernard Hwy.
Chalmette, LA 70043
Tel: (504) 271-1658
Fax: (504) 279-2874
djarrell@stbda.org

by ECF delivery, electronic transmission, certified mail, return receipt requested, hand delivery, and/or facsimile transmission pursuant to the Federal Rules of Civil Procedure, on this 6th day of August, 2024.

*/s/ L. Etienne Balart*
L. ETIENNE BALART (#24951)