THIRTY-FOURTH JUDICIAL DISTRICT

FOR THE PARISH OF ST. BERNARD

STATE OF LOUISIANA

NUMBER:    2 4 - 0 8 9 2                    DIVISION:



THE ST. BERNARD PARISH SCHOOL BOARD
*Petitioner*

VERSUS

THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS
*Respondent*

FILED: _____ JUL 0 8 2024 _____    CLERK: _Randy S. Nunez_

_____@ 4:20pm._____

*PETITION FOR A PRELIMINARY AND PERMANENT INJUNCTION*

NOW INTO COURT, through undersigned counsel, comes the
ST. BERNARD PARISH SCHOOL BOARD, which respectfully submits
the following:

PART I:

PARTIES

1.

Made petitioner herein is:

(1)    THE ST. BERNARD PARISH SCHOOL BOARD, a political
       subdivision of the State of Louisiana with territorial
       boundaries that include all of St. Bernard Parish.

2.

[ 1 / 55 ]

Exhibit A

Made defendant herein is:

(1)    **THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS** ("the Port of New Orleans"), a political subdivision of the State of Louisiana located in and with territorial boundaries that it claims to include all of Orleans Parish, Jefferson Parish, and St. Bernard Parish.

## PART II:

### JURISDICTION AND VENUE

#### 3.

This Court has jurisdiction over defendants under Civil Code of Procedure Article 6 and Louisiana Revised Statutes, Title 13, Section 5104.

#### 4.

The Thirty-Fourth Judicial District is the appropriate forum as to defendant the Port of New Orleans under Louisiana Revised Statutes, Title 13, Section 5104(B) as the Port of New Orleans claims that its territorial jurisdiction includes all of St. Bernard Parish which said parish is located entirely within the Thirty-Fourth Judicial District.

## PART III:

[ 2 / 55 ]

## STANDING

### 5.

Based on the information available to St. Bernard Parish School Board, it is highly probable, if not certain, that the Louisiana International Terminal will impose significant financial and operational burdens on St. Bernard Parish School Board for the following reasons, to-wit:

### 6.

The St. Bernard Parish School Board owns and actively operates the W. Smith Junior Elementary School located at 6701 E. St. Bernard Hwy., Violet, LA 70092.

### 7.

W. Smith Junior Elementary School falls squarely within the footprint of the proposed Louisiana International Terminal. See Exhibit 1.

### 8.

In fact, all known renderings of the Louisiana International Terminal that have been disseminated were designed and produced on the implicit assumption that W. Smith Junior Elementary School would be somehow removed.

### 9.

W. Smith, Jr. Junior Elementary School, as a currently operational school, does not and cannot constitute unused or surplus property thereby prohibiting the school board from selling, transferring, or otherwise alienating the W. Smith Junior Elementary School school property. See generally, La. R.S. 17:87.6 and La. R.S. 41:891.

### 10.

Furthermore, upon information and belief, the W. Smith Junior Elementary School property is not subject to expropriation under Louisiana law.

### 11.

A school board, through its agents and teachers, owe a duty of reasonable supervision over students. *S.J. v. Lafayette Parish School Board*, 2006-2862 (La. 6/29/2007), 959 So.2d 884.

### 12.

Competent supervision must be appropriate to the age of the children and the attendant circumstances. *S.J. v. Lafayette Parish School Board*, 2006-2862 (La. 6/29/2007), 959 So.2d 884.

### 13.

The duty of reasonable supervision is generally always present when a child is on campus during regular school hours, is waiting on the school's ground for a school bus, or is participating in an

[ 4 / 55 ]

after school and sanctioned activity such as band rehearsal or sports related activities. *S.J. v. Lafayette Parish School Board*, 2006-2862 (La. 6/29/2007), 959 So.2d 884.

### 14.

While school boards are generally not responsible for what occurs after school hours, or off school property, there are times, nevertheless, when school boards can voluntarily assume such a duty. *S.J. v. Lafayette Parish School Board*, 2006-2862 (La. 6/29/2007), 959 So.2d 884.

### 15.

This duty even extends to protect students from third parties' criminal activity when the risk from such criminal activity is reasonably foreseeable. *Posecai v. Wal-Mart Stores, Inc.*, 752 So.2d 762 (La. 1999).

### 16.

For the reasons set forth in more detail below, the St. Bernard Parish School Board reasonably anticipates that the safety, health, and welfare of the students, teachers, and other employees of W. Smith Junior Elementary School will be endangered by the encirclement and construction of the massive industrial facility known as the Louisiana International Terminal.

### 17.

[ 5 / 55 ]

On June 25, 2024, in the discharge and satisfaction of its obligations, the St. Bernard Parish School Board voted to institute this action to protect the safety, health, and welfare  to the students, teachers, and other employees of W. Smith, Jr. Elementary School.

## PART IV:

### FACTUAL AND LEGAL BACKGROUND

**18.**

The historical development of the Port of New Orleans and the Port of St. Bernard is necessary to put the instant dispute in context and to highlight the absolute negligence of the Port of New Orleans in not securing the relocation of W. Smith Junior Elementary School prior to or concurrent with its acquisition of the other parcels intended to make up the Louisiana International Terminal.

**19.**

On April 20, 1974, the Louisiana Constitution of 1974 was adopted and became effective on January 1, 1975.

**20.**

The St. Bernard Parish School Board existed prior to the adoption of the Constitution of 1974.

**21.**

[ 6 / 55 ]

Under Article § 10(A) of the Constitution of 1974, and in conjunction with La. R.S. 17:51, the St. Bernard Parish School Board was deemed to continue to exist as it was constituted prior to the adoption of the Constitution.

### 22.

The boundaries of the Parish of St. Bernard were established over a long period of time and ultimately fixed by Act 23 of 1975 in conjunction with Article VI § 1 of the Constitution of 1974.

### 23.

Pursuant to La R.S. 17:51, the territorial limits of the St. Bernard Parish School Board are co-extensive with that of St. Bernard Parish.

### 24.

The Port of New Orleans was statutorily created by Act 70 of 1896.

### 25.

Act 70 of 1896 merely established that the board of commissioners of the Port of New Orleans was to be selected from a tri-parish area consisting of Orleans, St. Bernard, and Jefferson parishes.

### 26.

It has long been recognized that pursuant to Act 70 of 1896 "[t]here are no statutorily mandated territorial limits of the Dock Board." *Boguille, et al v. Chambers, et al*, 96–CA–1173, p. 9 (La.App. 4 Cir. 12/11/1996), 685 So.2d 582, 585 n. 7.

### 27.

A footnote to the above observation explains that:

> The Dock Board was created by Act 70 of 1896. The preamble merely states that the Port of New Orleans has extended beyond the limits of the City of New Orleans, and thus the necessity of establishing a commission comprising representatives of Orleans, Jefferson and St. Bernard Parishes.
>
> *Boguille, et al v. Chambers, et al*, 96–CA–1173, p. 9 (La.App. 4 Cir. 12/11/1996), 685 So.2d 582, 585, n. 7

### 28.

Beginning in 1960, and continuing through 1992, the St. Bernard Port underwent numerous revisions, all of which provide context for an understanding of the law as it presently exists.

### 29.

The St. Bernard Port was originally established by Act No. 228 of 1960, and which was codified as La. R.S. 34:1701, *et seq.*, and which provided:

> The St. Bernard Navigable Waterway and Terminal District is hereby created as a public corporation and political subdivision of the

State of Louisiana and its territorial limits shall be co-extensive with the Parish of St. Bernard, Louisiana, as presently constituted, *less and except that portion of the Parish occupied by the Mississippi River and the Mississippi River batture and levee.*

(Emphasis added).

### 30.

Act No. 109 of 1962 revised La. R.S. 34:1701 as follows:

The St. Bernard Navigable Waterway and Terminal district created as a public corporation and political subdivision of the State of Louisiana under the authority of Section 31 of Article XIV of the Constitution of the State of Louisiana for the year of 1921, as amended, shall have territorial limits co-extensive with the parish of St. Bernard, Louisiana, as presently constituted, less and except that portion of the parish occupied by the Mississippi River and the Mississippi River batture and levee.

### 31.

Act No. 404 of 1964 thereafter substituted "St. Bernard Port, Harbor and Terminal District" for "St. Bernard Navigable Waterway and Terminal District."

### 32.

Act No. 416 of 1970 thereafter substituted "provided, however, that nothing in this Act shall add to or detract from the present provisions of the constitution and statutes relative to the Board of Commissioners of the Port of New Orleans, and all said provisions, rights and powers of said Board of Commissioners are expressly

[ 9 / 55 ]

preserved" for "as presently constituted, less and except that portion of the Parish occupied by the Mississippi River and the Mississippi River batture and levee."

33.

Article 6 § 43 of the Louisiana Constitution of 1974 provided for the continuing existence of all then existing ports.  Specifically, the Constitution provided:

> §43.  Port Commissions and Districts
>
> Section 43. All deep-water port commissions and all deep-water port, harbor, and terminal districts as organized and constituted on January 1, 1974, including their powers and functions, structure and organization, and territorial jurisdiction, are ratified and confirmed and shall continue to exist, except that
>
> (1) The legislature by law may grant additional powers and functions to any such commission or district and may create new port commissions or port, harbor, and terminal districts.
>
> (2) Only by law enacted by the favorable vote of two-thirds of the elected members of each house, may the legislature consolidate or abolish any such commission or district or diminish, reduce, or withdraw from any such commission or district any of its powers and functions and affect the structure and organization, distribution, and redistribution of the powers and functions of any such

[ 10 / 55 ]

commission or district, including additions to
or reductions of its territorial jurisdiction.

### 34.

Prior to the adoption of the Constitution of 1974, Act 228 of

1960, was passed under a similar provision creating the St. Bernard

Port, thereby reducing the territorial jurisdiction of the Port of New

Orleans.

### 35.

Act No. 285 of 1976 removed the language substituted by Act.

No. 416 of 1970 and added the following provision:

> "The board of commissioners for the district
> shall have complete jurisdiction to regulate all
> domestic, coastwise, and intercoastal
> commerce and traffic of said district, and all
> commerce and traffic within the district where
> such is conducted by or through a facility
> wholly owned by the district."

### 36.

The legislative history reveals how the St. Bernard Port

changed over the years. Originally, the St. Bernard Port had

jurisdiction over all of St. Bernard except river traffic, the batture,

and river levees. Notably, at that time, the St. Bernard Port was

merely a juridical entity, i.e. the St. Bernard Port had not yet

sufficiently materialized to conduct in actual operations. In

anticipation of actual operations, the jurisdiction of the St. Bernard

Port was clarified to be complete and coextensive with St. Bernard

Parish with no exceptions.

### 37.

At the same time, La. R.S. 34:21, as in effect at that time,

clarified that limits of the jurisdiction of the Port of New Orleans:

> The board of commissioners shall regulate the
> commerce and traffic of the port and harbor of
> New Orleans in such manner as may, in its
> judgment, be best for the maintenance and
> development thereof.
>
> It shall be the duty of the board to have charge
> of, and administrate the public wharves,
> docks, sheds, and landings of the port of New
> Orleans which are owned and operated, or
> which may be purchased, acquired or operated
> by the board; to construct new wharves and
> other structures when necessary; to erect
> sheds and other structures on such wharves
> and landings, to place and keep these wharves
> and landings, sheds and other structures in
> good condition; to maintain proper depths of
> water at all such wharves and landings, sheds,
> and other structures; to provide light, water,
> police protection, and any other services for
> such wharves, landings, and sheds, as it may
> deem advisable; to finance erect, and operate
> all basins, locks, canals, and warehouse
> elevators; to charge for the use of the wharves,
> sheds, and other structures, for the use of all
> facilities administered by it, and for all
> services rendered by it, such fees, rates, tariffs
> or other charges as it may establish.

### 38.

Notably, St. Bernard Parish was not mentioned in the legislation re-establishing and continuing the Port of New Orleans.

### 39.

In a dispute arose between the Port of New Orleans and the Port of St. Bernard as to which agency had jurisdiction over a proposed international commerce facility in the St. Bernard Parish.

### 40.

The dispute as to the jurisdiction of the St. Bernard Port naturally evolved into a lawsuit entitled *River Marine Contractors, Inc. v. Board of Commissioners for the St. Bernard Port, Harbor, and Terminal District and the Board of Commissioners for the Port of New Orleans.*

### 41.

The district Court rendered a judgment declaring that the St. Bernard Port "has authority to regulate operation of all commerce, *including international commerce,* where such is conducted by or through a facility wholly owned."

### 42.

The New Orleans Port appealed the judgment of the district Court.

### 43.

The Fourth Circuit Court of Appeal ultimately reversed the judgment of the district court declaring that the St. Bernard Port only had jurisdiction over cargo "whose origin and destination is wholly within the continental United States, leaving the regulation of international commerce to the Port of New Orleans." *River Marine Contractors, Inc. v. Board of Commissioners for the St. Bernard Port, Harbor, and Terminal District, et al*, 92-CA-0526 (La.App. 4 Cir. 09/17/1992), 605 So.2d 654.

### 44.

The appellate court explicitly invited the legislature to correct any erroneous interpretation of the law:

> [I]f ... the legislature erred in expressing its intention, it is not the function of the judicial branch to correct such an error, unless the error creates an ambiguity. Such an error (if one occurred) should be corrected by the legislature.

### 45.

The appellate court also ominously recognized:

> No one contests the fact that the Port of New Orleans has general regulatory authority over the parishes of Orleans, Jefferson and St. Bernard [see Act 70 of 1896 which provisions as amended are now contained in LSA–R.S. 34:1 et seq.; *State ex rel. Tallant v. Board of Com'rs of Port of New Orleans*, 161 La. 361, 108 So. 770 (La.1926); *Barrett Mfg. Co. v. Board of Com'rs for Port of New Orleans*,133 La. 1022, 63 So. 505 (1913)], subject to exceptions carved

[ 14 / 55 ]

out in favor of the Port of St. Bernard beginning with the creation of what is now The Board of Commissioners of the St. Bernard Port, Harbor and Terminal District by Act 228 of 1960 which provisions are contained in LSA−R.S. 34:1701−34:1715.

### 46.

While this appeal was still pending, pursuant to the authority granted to it under Article 6 § 43 of the Constitution, the legislature took such action through Act 40 of 1992 and amended the various statutes affecting the jurisdiction of the Port of New Orleans and the St. Bernard Port.

### 47.

La. R.S. 34:21(A)(1) was amended to read as follows:

§21. Rights and powers of board in general

A. (1)    The board of commissioners shall regulate the commerce and traffic of the port and harbor of New Orleans in such manner as may, in its judgment, be best for the maintenance and development thereof.

### 48.

The plain language of La. R.S. 34:21(A)(1) reflects a departure from the tri-parish jurisdiction thought to exist prior to the passage of these amendments.    Act 40 of 1992 reduced the territorial jurisdiction of the Port of New Orleans to extend only to "New Orleans," i.e. the City of New Orleans.    Act 40 of 1992 could

have, but did not, reauthorize the jurisdiction to extend to the "Greater New Orleans," which could be interpreted, as a referent, to include the parishes of Orleans, St. Bernard, and Jefferson.

### 49.

In the context of the instant lawsuit, this might seem to be a major change to the territorial jurisdiction of the Port of New Orleans. However, prior to the events that form the basis of this lawsuit, Act 40 of 1992 was largely a non-event as the Port of New Orleans had never owned or operated any port facility in the Parish of St. Bernard under its general jurisdiction.

### 50.

La. R.S. 34:21 was further amended to read as follows:

§21. Rights and powers of board in general

(2)    However, such regulation of such commerce and traffic including international commerce in the parish of St. Bernard shall be governed by the provisions of R.S. 34:1701 et seq.

...

(Emphasis added).

### 51.

When read together, it was unmistakably clear that the Port of New Orleans had no general jurisdiction whatsoever in the Parish of

[ 16 / 55 ]

St. Bernard.    All general jurisdiction in St. Bernard Parish was statutorily given to and imposed upon the Port of St. Bernard.

52.

Act 40 of 1992 also amended La. R.S. 34:1701 to read as follows:

§1701. Creation and territorial limits

The St. Bernard Port, Harbor and Terminal District, created as a public corporation and political subdivision of the state of Louisiana under the authority of Section 31 of Article XIV of the Constitution of the state of Louisiana for the year 1921, as amended, shall have territorial limits coextensive with the parish of St. Bernard.    The territorial limits and territorial jurisdiction of said district shall be the territory, including all lands, waterways, rivers, lakes, and navigable bodies, comprising and lying within the limits and boundaries of St. Bernard Parish. *The board of commissioners for the district shall have complete jurisdiction to regulate all domestic, coastwise, and intercoastal commerce and traffic within the district including cargo bound for and/or in and/or coming out of international commerce where such commerce is conducted by or through a facility wholly owned by the district.*

...

(Emphasis added).

53.

Act 40 of 1992 also amended La. R.S. 34:1705 to read as follows:

[ 17 / 55 ]

§1705. Rights of the board of commissioners

A.(1) *The board of commissioners of the St. Bernard Port, Harbor and Terminal District shall have the sole power to regulate,* pursuant to R.S. 34:1703, the domestic, coastwise, and intercoastal commerce and traffic of said district and all commerce and traffic within the district including cargo bound for an/or in, and/or coming out of international commerce where such commerce and traffic is conducted by or through a facility wholly owned by the district.

...

(Emphasis added).

### 54.

In fully separating the Port of New Orleans and the Port of St. Bernard, the legislature also enacted provisions to prevent the Port of St. Bernard from competing with and undercutting the Port of New Orleans by offering cheaper rates.    Act 40 of 1992 also amended La. R.S. 34:1703 to read in part as follows:

D. (1) The board shall have the power to reasonably regulate the fees and charges for the structures, works, and facilities administered by the board and all services rendered by it and shall have the duty to collect such fees, rates, or other charges whether established by lease, tariff, or other agreement provided however such fees and charges for the use of such facilities or other services in the course of regulation of

[ 18 / 55 ]

international commerce, the board shall not be empowered to impose nor shall it collect any fee, assessment, rate, or other charge whether established by lease, tariff, or other agreement in an amount less than those imposed by the Board of Commissioners of the Port of New Orleans, whether by lease, tariff, or other agreement as they may be amended, revised, or applied by the Board of Commissioners of the Port of New Orleans; or with the consent of the Board of Commissioners of the Port of New Orleans.

(2) Leases of facilities administered by the board shall require that the lessee publish a tariff containing rates and charges consistent with the board's tariff except with the consent of the Board of Commissioners of the Port of New Orleans.

(3) The board shall not grant any preference, concession, or reduction in any charges for facilities or services in the course of the regulation of international commerce greater than those granted in the same circumstance by the Board of Commissioners of the Port of New Orleans, whether by lease, tariff, or other agreement as they may be amended or revised or applied by the Board of Commissioners of the Port of New Orleans or with, consent of the Board of Commissioners of the Port of New Orleans.

E. The board shall have the power to reasonably regulate the commerce and traffic of the district, impose rules and regulations, set requirements, performance, safety, environmental, and facility standards and generally provide for the conduct of such activities whether established by lease, tariff, or other agreement provided however that such regulation by the board in the course of the regulation of international commerce, the

[ 19 / 55 ]

> board shall not be empowered to impose any
> regulation inconsistent than those imposed in
> the same circumstance by the Board of
> Commissioners of the Port of New Orleans
> whether by lease, tariff, or other agreement as
> the same may be amended or revised or
> applied by the Board of Commissioners of the
> Port of New Orleans.

### 55.

The Port of New Orleans actively sought to prevent the passage of Act 40 of 1992, all to no avail.

### 56.

Act 40 of 1992, passed by 2/3 of the members of each house, specifically in the house with a vote of 96 "yeas," 3 "nays," and 6 "absent" and in the senate with a vote of 30 "yeas," 5 "nays," and 4 "absent."    Act 40 of 1992 makes it unmistakably clear that the *rights and powers* of the Port of Orleans do not extend to the parish of St. Bernard.   In essence, Act 40 of 1992 resolved that the Port of New Orleans was no longer a tri-parish jurisdiction.   The rights and powers of the Port of New Orleans were redistributed in accordance with the Constitution.

### 57.

Act 40 of 1992 resolved that the Port of New Orleans would no longer have any jurisdiction in the Parish of St. Bernard and further

establishes that any regulated facilities must be wholly owned by the St. Bernard Port.

### 58.

Plainly this makes sense as there is no legitimate reason to have two port authorities exercising overlapping jurisdiction in St. Bernard Parish and that an external jurisdiction cannot expand its own jurisdiction and usurp the jurisdiction of the St. Bernard Port by simply acquiring title to property in the jurisdiction of the St. Bernard Port.

### 59.

Furthermore, the actions of the parties acknowledged the effect of Act 40 of 1992.   Since that time, up until the facts giving rise to this lawsuit, the Port of New Orleans did not own or operate any port facilities in the Parish of St. Bernard.

### 60.

At some point prior to December 7, 2004, and in recognition of the jurisdictional independence of the Port of St. Bernard, the Port of New Orleans and the St. Bernard Port devised a plan to executive a non-legislative merger and consolidation of the St. Bernard Port into a *de facto* subsidiary of the Port of New Orleans under the pretext of a cooperative endeavor agreement pursuant to Article 7 § 14 of the Louisiana Constitution.

[ 21 / 55 ]

**61.**

Notably, the Original CEA did not identify a specific public purpose or a specific, identifiable project to which the parties sought to cooperate. Instead, the Original CEA very broadly reflected an agreement to work cooperatively in the future, i.e. to "consider joint investments of capital" and to "consider the specific details ... on a case by case basis in the future."

**62.**

To effectuate that plan, the Port of New Orleans and St. Bernard Port entered into a Cooperative Endeavor Agreement on December 7, 2004 ("the Original CEA").

**63.**

The recitals to the Original CEA broadly described that the intended purpose was to take a "regional approach to port marketing and operations." The "regional approach" described therein effectively operated as a merger of the St. Bernard Port into the Port of New Orleans.

**64.**

On November 17, 2017, the Port of New Orleans and St. Bernard Port executed the First Amendment to the Original CEA ("First Amended CEA"). The First Amendment CEA consisted mainly of recitals and a one paragraph agreement to "preserve the (Foreign

Trade-Zone magnet site) status" of the two parcels wholly owned and operated by the St. Bernard Port and located entirely within the Parish of St. Bernard.

### 65.

On December 29, 2020, the Port of New Orleans and St. Bernard Port executed the Second Amendment to the Original CEA ("Second Amended CEA").  The Second CEA purported to "create a joint effort" "[b]y collaborating on marketing and working cooperatively in the planning and development of any new container and logistics facilities in St. Bernard Parish."

### 66.

Part I of the Second Amended CEA broadly sets forth that the Port of New Orleans undertake the satisfaction of judgments related to the expropriation of the Violet Docket Port Property that would thereby allow the Port of New Orleans construct a container terminal at the Violet Dock Port Property "for the economic benefit of the Parish."

### 67.

Part I of the Second Amended CEA broadly sets forth that the Port of New Orleans would acquire from the St. Bernard Port its other properties surrounding the Violet Docket Port Property.

### 68.

[ 23 / 55 ]

The Violet Docket Port Property and other properties surrounding the Violet Docket Port Property comprise the Total Property.

### 69.

The Second Amended CEA also provided that a portion of the Violet Docket Port Property would be leased back to the St. Bernard Port for the purposes of subleasing that portion to Associated Terminals.

### 70.

The Second Amended CEA purports to effectuate a non-compete agreement wherein the St. Bernard Port would not develop a container terminal or otherwise compete in international container vessel related activities. For instance:

1.    Section B(1)(c) states that the Port of New Orleans will pay the St. Bernard Port $1,500,000 to "not develop the Violet Docket Port as a container terminal or otherwise compete in any international container vessel-related activities for a period of (8) years."

2.    Part D(1) provides that the purpose of the Second Amended CEA is to allow the Port of New Orleans to develop an international container yard and that the St. Bernard Port "agrees not to compete in any international

[ 24 / 55 ]

container vessel-related activities without the prior written consent of the Board for a period of eight years following the Amendment Effective Date."

3.    Part G(1) provides that "the terms of V.D.1 (purporting to authorize the Port of New Orleans to operate in St. Bernard Parish) herein shall survive the performance or termination of this CEA for the duration specified therein."

### 71.

The Second Amended CEA further provides that "this CEA does not obligate either party … to share any of its current or future assets or properties…," meaning that the St. Bernard Port would not share in any of the revenue from the operations of the Port of New Orleans in St. Bernard Parish.

### 72.

The Second Amended CEA further disclaims the cooperation between the parties: "[t]he Parties … do not intend to create a partnership, principal-agent, or joint venture relationship, and nothing in the Second Amendment and the CEA shall be construed as creating such relationship between the Parties."

### 73.

The Second Amended CEA brought about a realized a loss to the St. Bernard Port in an amount no less than $22,633,129, as set forth in more detail below.

74.

On December 22, 2010, when the St. Bernard Port originally filed an expropriation proceeding related to the Violet Dock Port, it deposited $16,000,000 in to the Registry of the Court representing the alleged fair market value of the Violet Dock Port.[1]

75.

Litigation ensued and on September 12, 2018, the Fourth Circuit increased the value of the Violet Dock Port property and made the following awards:

| | |
|---|---|
| Value of the Violet Dock Port Property | $28,764,685 |
| Judicial Interest | $6,403,326 |
| Attorney Fees and Court costs | $3,392,079 |
| Judicial Interest on Attorney Fees | $337,262 |
| Total Judgment Amount | $38,897,352[2] |

76.

As part of the Second Amended Cooperative Endeavor Agreement, the St. Bernard Port effectuated a transfer of the Violet Dock Port property to the Port of New Orleans under the following, along with other additional, conditions.

---

[1] 2020 Legislative Audit Report, pages 44-45.
[2] 2020 Legislative Audit Report, pages 44-45.

**77.**

The Port of New Orleans brokered a settlement with the Violet Dock Port wherein the Port of New Orleans would purchase the judgment rendered in favor of the Violet Dock Port against the St. Bernard Port for $21,000,000.

**78.**

As part of the Second Amended Cooperative Endeavor Agreement, the St. Bernard Port agreed to pay an additional $3,000,000 over the $16,000,000 previously deposited in the Registry of the Court in satisfaction of the settlement brokered by the Port of New Orleans and the Port of New Orleans agreed to pay the remaining $18,000,000 to the Violet Dock Port.

**79.**

In 2021, the year following the execution of the Second Amended Cooperative Endeavor Agreement, the St. Bernard Port noted a book loss on the Violet Dock Port property in the amount of $17,565,070.

**80.**

Notwithstanding the book loss of $17,565,070, the St. Bernard Port took an actual loss of $22,633,129, calculated as follows:

| | |
|---|---|
| Deposit on December 22, 2010 | $16,000,000 |
| Second amendment to the CEA | $3,000,000 |

[ 27 / 55 ]

St. Bernard Port's own attorney fees                $3,633,129[3]

                                                    _____

                                                    $22,633,129

**81.**

As a result of the Second Amended Cooperative Endeavor Agreement, the St. Bernard Port incurred an actual loss of at least $22,633,129 to assist the Port of New Orleans of acquiring the Violet Dock Port.

**82.**

In connection with the Second Amended Cooperative Endeavor Agreement, the Port of New Orleans acquired the following parcels with the intention of developing the Louisiana International Terminal:

**83.**

On January 3, 2022, the Port of New Orleans purchased Parcel B89900000011 recorded at C.O.B. book 1204 folio 680 for $18,000,000 consisting of some number of acres for with a judicially determined value of $28,764,685 and a current valuation of $6,792,480.

**84.**

---

[3] This amount does not represent the full amount of attorney's fees as the Port did not report its expenses for attorney's fees for the years 2010 and 2011. Attorney fee calculations were derived from the 2012–2022 Legislative Audit Reports.

On January 3, 2022, the Port of New Orleans purchased Parcel B89900000012 recorded at C.O.B. book 1225 folio 148 consisting of 479.478 acres and A89900000245 consisting of 256.839 acres for a combined price of $18,407,925 and a current valuation of $11,695,350 and $5,754,000, respectively.

## 85.

On January 3, 2022, the Port of New Orleans purchased Parcel B89900000013 recorded at C.O.B. book 1225 folio 206 consisting of 54.974 acres for a price of $3,195,075 and a current valuation of $3,035,320.

## 86.

On January 3, 2022, the Port of New Orleans purchased Parcel B89900000014 recorded at C.O.B. book 1225 folio 292 consisting of 54.091 acres for a price of $3,328,050 and a current valuation of $3,072,500.

## 87.

On January 3, 2022, the Port of New Orleans purchased Parcel B89900000015 recorded at C.O.B. book 1225 folios 117, 126, 135, 317, 471, 362, 437, 453, and 471 and book 1227 folio 774 consisting of 461.59 acres for a price of $3,545,201 and a current valuation of $3,230,440.

[ 29 / 55 ]

**88.**

On January 20, 2023, the Port of New Orleans purchased Parcels B39900001270, B89900000026, B89900000027, and B89900000133 recorded at C.O.B. book 1242 folio 597 consisting of some number of acres for a price of $7,000,000 and a current valuation of 144,000, $1,033,510, $690,000, and $894,553, respectively.

**89.**

As relevant to the instant lawsuit, and as reflected, although not depicted for reasons to be set forth below, the proposed Louisiana International Terminal surrounds the W. Smith, Jr. Junior Elementary School.

**90.**

All of the known promotional material for the Louisiana International Terminal failed to depict either that (1) W. Smith Junior Elementary School was located almost directly in the center of the proposed development once completed; and/or (2) that the development as depicted assumed the relocation of W. Smith, Jr. Junior Elementary School.

**91.**

Not withstanding an expenditure of at least $53,476,251 by the Port of New Orleans to acquire the site for the proposed Louisiana International Terminal, the Port of New Orleans did not secure the acquisition of the W. Smith Junior Elementary School from the St. Bernard Parish School Board prior to acquiring all of the other properties described herein that will form part of the proposed facility.

### 92.

Notwithstanding an expenditure of at least $53,476,251 by the Port of New Orleans to acquire the site for the proposed Louisiana International Terminal, the Port of New Orleans ignored state law and the operations of the W. Smith Junior Elementary School.

### 93.

Upon information and belief, the Port of New Orleans had knowledge that the St. Bernard Parish School Board was legally prohibited from selling, transferring, or otherwise conveying non-surplus property such as W. Smith, Jr. Junior Elementary School.

### 94.

Upon information and belief, the Port of New Orleans operated under the motto that "it's better to ask for forgiveness than to ask for permission" and took a calculated risk to not discuss the potential acquisition of W. Smith Junior Elementary School until

[ 31 / 55 ]

after the Port of New Orleans incurred such heavy expenses in acquiring the surrounding property that it would seem wasteful for the St. Bernard Parish School Board to not sell the property to the Port of New Orleans.

95.

To that end, the Port of New Orleans began holding community meetings relaying information to the community at large that the Port of New Orleans intended to acquire the parcel upon which W. Smith Junior Elementary School was located and then to relocate W. Smith Junior Elementary School to an alternate site on property either owned by or to be acquired by the Port of New Orleans for the new school. This was done with knowledge that state law prevents the sale of an operating school as it cannot be declared surplus property.

96.

These meetings prompted intense interest from the community at large and gave the community a false impression that there were active discussions between the St. Bernard Parish School Board and the Port of New Orleans to relocate W. Smith Junior Elementary School or even that the St. Bernard Parish School Board had already executed an agreement to do so.

97.

[ 32 / 55 ]

In light of the intense community interest in the relocation of the school, on June 14, 2024, at a regularly scheduled School Board meeting, a public presentation was made explaining that the School Board was legally prohibited from selling any active and operational school, including, but not limited to, W. Smith, Jr. Junior Elementary School.

## 98.

At that same meeting, Board President Diana Dysart stated in unequivocal terms that the Port of New Orleans had not presented any specific, firm, and written proposal to acquire and/or relocate W. Smith, Jr. Junior Elementary School.

## 99.

Upon information and belief, and in light of reckless actions of the Port of New Orleans to purchase the surrounding parcels without having addressed the issues presented by the W. Smith, Jr. Junior Elementary School, the community meetings described above were merely a part of the public relations campaign commissioned by the Port of New Orleans and did not reflect the true state of events.

## 100.

Additionally, the Port of New Orleans has actual knowledge of the disruption and the threat to the physical safety of the children

[ 33 / 55 ]

attending W. Smith Junior Elementary School that would be caused by the Louisiana International Terminal and its operations.

### 101.

On May 15, 2024 on a publicly broadcast television station, and prior to the filing of the instant lawsuit, the Port of New Orleans, through its Chairman, Walter J. Leger, Jr., admitted as much:

> MR. LEGER:
>
> If that can't go forward (sic) then we don't think there's a sound legal basis for the opposition.
>
> But if it can't, *__we (sic) build the terminal around the school which is not a good thing for the school or the kids or the community.__*
>
> (Emphasis added).

### 102.

Notwithstanding the foregoing, and in an attempt to coerce the St. Bernard Parish School Board into relocating W. Smith, Jr. Junior Elementary School, the Port of New Orleans had previously threatened to build the Louisiana International Terminal around W. Smith Junior Elementary School and has since commenced actual construction in the immediate vicinity of the school.

### 103.

Upon information and belief, the construction of the Louisiana International Terminal will present a real and substantial threat to

the health, safety, and public welfare of the students, teachers, and other faculty at W. Smith, Jr. Junior Elementary School.

### 104.

After May 14, 2024 School Board meeting described above, the Port of New Orleans continued to move forward and commenced actual construction operations in the immediate vicinity of W. Smith, Jr. Junior Elementary School.

### 105.

For the foregoing reasons, St. Bernard Parish School Board contends that the Louisiana International Terminal in the immediate vicinity of the W. Smith Junior Elementary School property will constitute an impermissible nuisance and prohibited virtual taking.

## PART V:

## PRELIMINARY AND PERMANENT

## PROHIBITORY INJUNCTIONS

### 106.

An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant.  La. C.C.P. Art. 3601.

[ 35 / 55 ]

### 107.

During the pendency of an action for an injunction, the court may issue a temporary restraining order, a preliminary injunction, or both.  La. C.C.P. Art. 3601.

### 108.

A preliminary injunction shall not issue unless the adverse party is given notice and an opportunity to be heard.  La. C.C.P. Art. 3602.

### 109.

"Irreparable injury" for the purposes of a preliminary injunction, is an injury which cannot be compensated in money damages or be measured by pecuniary standards."  *Cason v. Chesapeake Operating, Inc.*, 47,084 (La.App. 2 Cir. 04/11/12), 92 So.3d 436, writ denied, 12-1290 (La. 09/28/12), 98 So.3d 840.

### 110.

Generally, a temporary restraining order and preliminary injunction is an interlocutory procedural device designed to preserve the existing status quo pending a full trial on the merits. *South Central Bell Telephone Company v. Louisiana Public Service Commission*, 555 So.2d 1370 (La. 1990).

### 111.

A restraint on use may create either a personal obligation binding only on the parties to the agreement, or a real right running with the land which affects third parties when notice of it is recorded in the public records. *Mardis v. Brantley*, 30773-CA (La.App. 2 Cir. 08/25/1998), 717 So.2d 702. *Terrell v. Passenger*, 82-552 (La.App. 3 Cir. 03/09/1983), 428 So.2d 1241.

112.

When the restraint constitutes a real right, it may be enforced as follows:

> In case of an impending violation, the restraint may be enforced by an action for injunction brought by the person who imposed the restraint or by persons in whose favor the restraint was imposed. After violation, depending on the facts and circumstances of each case, a proper plaintiff may demand damages, resolution of the original transfer of property, or merely annulment of the alienation made in violation of the restraint.
>
> A.N. Yiannopoulos, 2 Louisiana Civil Law Treatise § 228 (3d. Ed. 1991).

See *Mardis v. Brantley*, 30773-CA (La.App. 2 Cir. 08/25/1998), 717 So.2d 702. 4 LA Civil Law Treatise § 6:28, Real right or personal obligation.

113.

[ 37 / 55 ]

As the titled owner of the W. Smith, Jr. Junior Elementary School, petitioner is authorized to institute this action to protect its real rights in and to the school site.

## VI.

## NUISANCE

### 114.

"Article 667, as one of the 'vicinage' articles, 'establish[es] certain limitations on the scope and extent of the right of ownership in immovable (real) property.' The article is 'an expression of the *sic utere* doctrine that limits the rights of proprietors in the use of their property.' 'The *sic utere* doctrine is an embodiment of the maxim '*sic utere tuo, ut alienum non laedas*'—'use your own property in such a manner as not to injure that of another.'' Article 667 imposes liability on the proprietor of an estate." *Ictech-Bendeck v. Progressive Waste Solutions of La, Inc.*, 367 F.Supp.3d 555 (E.D. La. 2019).

### 115.

In *Inabet v. Exxon Corp.*, 642 So.2d 1243 (La. 1993), the Supreme Court summarized the nuisance doctrine as follows:

> Article 667 prohibits uses which cause damage to neighbors or deprive them of the enjoyment of their property, while Article 668 permits uses which merely

[ 38 / 55 ]

cause neighbors some inconvenience. Id. at § 34. Article 669 allows suppression of certain inconveniences, if excessive under local ordinances and customs, and requires tolerance of lesser inconveniences. Together, the three articles establish the following principles: No one may use his property so as to cause damage to another or to interfere substantially with the enjoyment of another's property (Article 667). Landowners must necessarily be exposed to some inconveniences arising from the normal exercise of the right of ownership by a neighbor (Article 668). *__Excessive inconveniences caused by the emission of industrial smoke, odors, noise, dust, vapors and the like need not be tolerated in the absence of a conventional servitude; whether an inconvenience is excessive or not is to be determined in the light of local ordinances and customs (Article 669). Id. At § 34.__*

### 116.

The nuisance articles are not a remote intellectual endeavor.

### 117.

In *Borgnemouth Realty Co. v. Gulf Soap Co.*, 212 La. 57 (La. 06/16/1947), 31 So.2d 488:

As was pointed out in the recent decision of this court in the case of *Devoke et al. v. Yazoo & M. V. R. Co.*, La.Sup., 30 So.2d 816, 819, 'It is the universally accepted rule of law that 'The owner of property has a right to conduct thereon any lawful business not *per se* a nuisance, as long as the business is so conducted that it will not unreasonably inconvenience a neighbor in the reasonable enjoyment of his property. But every business, however lawful, must be conducted with due regard to the rights of others, and no one has a right to erect and maintain a nuisance to the injury of his neighbor even in the pursuit of a lawful trade, or to conduct a business on his own land in such a way as will be injurious or offensive to those residing in the vicinity,'' quoting from 39 Am.Jur. 324, Section 43. See,

[ 39 / 55 ]

also, the authorities cited in the *Devoke* case and in *Moss v. Burke & Trotti*, 198 La. 76, 3 So.2d 281.

> From the point of view of their nature, nuisances are sometimes classified as nuisances *per se* or at law, and nuisances *per accidens* or in fact. A nuisance at law or a nuisance *per se* is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact or *per accidens* are those which become nuisances by reason of circumstances and surroundings.' 46 C.J. 648, Section 5. See, also, 39 Am.Jur. 289, Section 11. As pointed out in the latter authority, 'The difference between a nuisance *per se* and a nuisance in fact lies in the proof, not in the remedy. In the case of a nuisance *per se*, the thing becomes a nuisance as a matter of law. Its existence need only be proved in any locality, and the right to relief is established by averment and proof of the mere act. But whether a thing not a nuisance *per se* is a nuisance *per accidens* or in fact depends upon its location and surroundings, the manner of its conduct, or other circumstances. In such cases, proof of the act and its consequences is necessary. The act or thing complained of must be shown by evidence to be a nuisance under the law, and whether it is or is not a nuisance is generally a question of fact.'

### 118.

Recently, in *Ellis v. Evonick*, E.D.La. No. 21-1089 (May 27, 2022), 2022 WL 1719196, Judge Vance of the Eastern District of Louisiana, articulated the distinct duty under the nuisance doctrine as follows:

> Accordingly, unlike their article 2315 general negligence claims, plaintiffs' nuisance claims do not require an allegation of a separate source of duty. The proprietor's duty to his neighbors is established by the Code itself, and it stems from the nature of the parties' relationships as neighbors. See A.N. Yiannopoulous, 4 La. Civ. L.

[ 40 / 55 ]

Treatise, Predial Servitudes § 3:16 (4th ed. 2021)
("[E]very landowner is bound by certain obligations of
vicinage prohibiting him from causing damage or
inconvenience to neighbors ...."); see also *Yokum v. 615
Bourbon St., L.L.C.*, 977 So.2d 859, 867 (La. 2008) (noting
"the servitude and vicinage duties of articles 667, 668,
and 669"); *Badke*, 139 So.3d at 1126 (noting "the
obligations of neighborhood established by [articles]
667-669").

(Emphasis added.)

### 119.

Articles 667-669 utilize the terms "to deprive his

neighbor of the liberty of enjoying his own" and "to cause an

inconvenience" to very generally describe the type of harm to be

prevented.  The damages articulated under Articles 667-669 very

generally falls within the very broad category of damages.  In *Badke*

*v. USA Speedway, L.L.C.*, 49,060-CA (La.App. 2 Cir. 05/14/2014), the

Court noted:

We sometimes use the word nuisance in describing the
type of conduct which violates the pronouncements
embodied in La. C.C. arts. 667–669. *Barrett v. T.L. James &
Co., supra.*

...

The test of the right to an injunction against the
maintenance of a nuisance is whether the alleged
nuisance produces serious or material discomfort to
persons of ordinary sensibilities in a normal state of
health. *Rodrigue v. Copeland, supra; Parish of East Feliciana
ex rel. East Feliciana Parish Police Jury v. Guidry, supra.*

### 120.

Courts have previously found that the following types of claims compensable claims under the nuisance doctrine:

(1) Excessive noises emanating from a commercial racetrack were found to be actionable as a violation of the nuisance prohibitions.. *Badke v. USA Speedway, L.L.C.*, 49,060-CA (La.App. 2 Cir. 05/14/2014).

(2) A rendering plant emitting nauseous and offensive odors was found to be actionable. *Borngemouth Realty Co. v. Gulf Soap Co.*, 212 La. 57 (La. 06/16/1947), 31 So.2d 488.

(3) Excessive inconvenience caused by the emission of industrial smoke, odors, noise, dust vapors was found to be actionable. *Inabet v. Exxon Corp.*, 642 So.2d 1243 (La. 1993).

(4) Settlement of powdered polyvinyl chloride upon neighbor's property was found to be actionable. *Critney v. Goodyear Tire & Rubber Co.*, 11596 (La.App. 1 Cir. 11/21/1977), 353 So.2d 341.

(5) Extravagant Christmas lights and displays constituted "real damage and no mere damage" that was found to be actionable. *Rodrigue v. Copeland*, 85-C-0484 (La. 09/10/1985), 475 So.2d 1071.

[ 42 / 55 ]

(6) Excessive smoke, gas, soot, cinders, and steam was found to be actionable. *McGee v. Yazoo* & M.V.R. Co., 19 So.2d 21 (La. 05/22/1944).

(7) Excessive noise emanating from a bar was found to be actionable. *Yokum v. 615 Bourbon Street, L.L.C.*, 2007-C-1785 (La. 02/26/2008), 977 So.2d 859.

(8) A horse stable near a residential area that became a harboring place for rats and flies and caused a stench was found to be actionable. *Robichaux v. Huppenbauer*, 3774 (La.App. 4 Cir. 02/02/1970), 231 So.2d 626. See also *Robichaux v. Huppenbauer*, 50499 (La. 03/12/1971), 245 So.2d 385.

(9) Excessive, unreasonable, and excessive noise, particularly during the night hours, was found to be actionable. *Beauvais v. D.C. Hall Transport, Inc.*, 7548 (La.App. 2 Cir. 11/03/1950), 49 So.2d 44.

(10) A dog barking at night to such an extent to disturb neighbors and prevent them from sleeping was found to be actionable. *Marks v. Luce*, 3318 (Orleans 02/23/1904), 1 Teiss. 107, 1940 WL 1497.

### 121.

It was recently recognized that injunctive relief to enjoin the construction of the Louisiana International Terminal was

[ 43 / 55 ]

premature given that "the project has not received any authorized permits to begin construction or operation." *Stop the Destruction of St. Bernard, Inc. v. Board of Commissioners for the Port of New Orleans,* 2023-0323 (La.App. 4 Cir. 10/26/23), 376 So.3d 982, writ denied 2023-C-01543 (La. 01/24/2024) 378 So.3d 66.

### 122.

However, shortly after the judgment in *Stop the Destruction* became final, the Port of New Orleans commenced actual construction in the immediate vicinity of the W. Smith, Jr. Junior Elementary School.

### 123.

Importantly, funding has already been committed: The State of Louisiana has committed $230.5 million dollars in funding for the Louisiana International Terminal; the federal government has committed $300 million dollars in funding for the Louisiana International Terminal; the State of Louisiana has committed $50 million dollars to the St. Bernard Transportation Corridor to connect the Louisiana International Terminal to the interstate system; and the State of Louisiana has committed $30.5 million to rehabilitate the St. Claude Bridge.

### 124.

Upon information and belief, the Louisiana International Terminal, as described above, will likely cause the following adverse impacts on the students of W. Smith Junior Elementary School:

1.    Increased rates of childhood asthma from diesel emissions;[4]

2.    Increased rates of childhood cancer from diesel emissions;[5]

3.    Increased risks of heart attack and strokes from diesel emissions;[6]

4.    Increased rates of premature deaths from diesel emissions;[7]

5.    Increased sluggishness in children due to diesel emissions;[8]

6.    Decreased lung function growth in children due to diesel emissions;[9]

7.    Cognitive deficiets; and

8.    Increased absenteeism and poor educational success.

125.

The cause of these effects are widely reported:

> Diesel engines emit a specific category of pollutants, diesel particulate matter (diesel

---

[4] See https://www.theguardian.com/business/2021/oct/15/us-california-ports-ships-supply-chain-pollution
[5] See https://www.theguardian.com/business/2021/oct/15/us-california-ports-ships-supply-chain-pollution
[6] See https://www.lung.org/blog/all-about-port-pollution
[7] See https://www.lung.org/blog/all-about-port-pollution
[8] See https://kutv.com/news/beyond-the-books/no-new-protections-in-place-for-school-children-near-utahs-inland-port
[9] See https://kutv.com/news/beyond-the-books/no-new-protections-in-place-for-school-children-near-utahs-inland-port

[ 45 / 55 ]

PM), which is composed of hundreds of different chemicals and volatile organic compounds. Diesel PM is a subset of PM 2.5, which has an increased ability to penetrate deep into the lungs and bloodstream, causing a cascade of physical ailments. These ailments include irritation of the eyes, throat, and nose, heart and lung disease, birth defects and premature death. Exposure to PM can also affect cognitive functions, leading to behavioral issues and neurological impairment.

...

Children are more susceptible to air pollutants, as they take in more air per unit of body weight than adults, are more physically active than adults, and can develop adverse health effects that persist into later life. Diagnosing children is difficult because children show fewer symptoms or don't recognize symptoms themselves. Long-term exposure to air pollutants can also lead to cognitive or behavioral disorders, learning disabilities, prolonged physical impairment, higher school absenteeism, and decreased earning potential in later life.[10]

### 126.

It is for this reason that ports are frequently described as "diesel death zones."[11]

### 127.

There can be no doubt that the inconvenience and interference likely to be caused by the construction and operation of the

---

[10] See
https://storymaps.arcgis.com/stories/18f4ea90caf74b279cfbc2f74075d17e
[11] See
https://storymaps.arcgis.com/stories/18f4ea90caf74b279cfbc2f74075d17e

[ 46 / 55 ]

Louisiana International Terminal will far exceed that of any of the cases noted above. No port facility such as this has ever been built around a school and for good reason as set forth above. Accordingly, petitioner is entitled to have this Court issue injunctive relief sufficient to prevent the interference with petitioner's use of its property.

128.

Petitioner avers that unless the Court immediately issues a Preliminary and Permanent Injunction, in the form described herein, Petitioner, will be prevented from using the W. Smith Junior Elementary School site for the benefit of the students thereof and furthermore will be prevented from the adequate discharge of its obligations to protect the health, safety, and welfare of the students, teachers, and other employees thereof.

129.

Moreover, the injunctive relief sought herein merely maintains the status quo of the parties until all of the issues can be determined on the merits without imposing necessary risks upon the students, teachers, and other employees of W. Smith, Jr. Elementary School.

130.

Accordingly, after all due proceedings are had, petitioner

[ 47 / 55 ]

requests that this Court immediately issue a preliminary and permanent prohibitory injunction:

1. enjoining defendants from any construction or construction related activities related to the Louisiana International Terminal within 2,500 feet of W. Smith, Jr. Junior Elementary School.

## VII.

### CUMULATION OF ACTIONS

### 131.

Plaintiff avers that it is entitled to cumulate its action for declaratory relief and its action for a permanent injunction under Louisiana Code of Civil Procedure Article 463 as there is a community of interest between the parties joined, each of the actions cumulated are brought in the proper venue, and all of the actions are mutually consistent and employ the same form of proceeding, namely the ordinary proceeding. The Supreme Court has recognized that cumulation of such actions is appropriate. *Chauvet v. City of Westwego*, 599 So.2d 294 (La. 1992).

## VIII.

### PRAYER FOR RELIEF

[ 48 / 55 ]

**132.**

WHEREFORE petitioner the St. Bernard Parish School Board respectfully requests and prays for the following relief:

(1) enjoining defendants from any construction or construction related activities related to the Louisiana International Terminal within 2,500 feet of W. Smith, Jr. Junior Elementary School; and

(2) For all such other general, legal, and equitable relief as this Court may deem appropriate.

**OFFICE OF THE DISTRICT ATTORNEY**
**FOR THE THIRTY-FOURTH JUDICIAL DISTRICT**

**HONORABLE PERRY M. NICOSIA**

BY: _____

**DAVID C. JARRELL** (Bar No. 30907)
1101 W. St. Bernard Hwy.
Chalmette, LA 70043
Tel:  (504) 271-1658
Fax: (504) 279-2874
djarrell@stbda.org
**Attorney for SBPSB**

[ 49 / 55 ]

## THIRTY-FOURTH JUDICIAL DISTRICT

## FOR THE PARISH OF ST. BERNARD

## STATE OF LOUISIANA

**NUMBER:**    2 4 - 0 8 9 2      **DIVISION:**



## THE ST. BERNARD PARISH SCHOOL BOARD
*Petitioner*

## VERSUS

## THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS
*Respondent*

**FILED:** _____JUL. 0 8 2024_____    **CLERK:** _____

*INTERROGATORIES AND*
*REQUESTS FOR PRODUCTION OF DOCUMENTS*

NOW INTO COURT, through undersigned counsel, comes the ST. BERNARD PARISH SCHOOL BOARD, which respectfully submits the following requests for production of documents:

### I.

### INTERROGATORIES

**REQUEST NO. 1:**

Please explain in as much detail as possible why you neglected to secure the relocation or otherwise address the location of the W. Smith Junior Elementary School prior to acquiring any of the properties that will form part of the Louisiana International Terminal.

### II.

### REQUESTS FOR PRODUCTION

[ 50 / 55 ]

**REQUEST NO. 1:**

All documents related to any potential effects of building the Louisiana International Terminal facility around W. Smith Junior Elementary School, including, but not limited to, traffic, noise, and/or safety.

**REQUEST NO. 2:**

All documents reflecting explicit Board authority and/or similar authority and/or directives to construct the Louisiana International Terminal facility around the W. Smith Junior Elementary School.

**REQUEST NO. 3:**

All documents reflecting any intent or desire to purchase or expropriate additional properties within a five mile radius of the W. Smith Junior Elementary School.

**REQUEST NO. 4:**

All documents reflecting any communication with the owners of any additional properties that you have an intent or desire to purchase or expropriate within a five mile radius of the W. Smith Junior Elementary School.

**REQUEST NO. 5:**

All documents reflecting the value of any additional properties that you have an intent or desire to purchase or expropriate within a five mile radius of the W. Smith Junior Elementary School.

**REQUEST NO. 6:**

All documents reflecting potential sites for the relocation of W. Smith Junior Elementary School.

**REQUEST NO. 7:**

All documents reflecting any estimates of the cost for the relocation of W. Smith Junior Elementary School, including any budgetary estimates.

Case Number:    24-0892 Transaction Date: 7/8/2024 Seq: 15 Page Sequence: 2

**REQUEST NO. 8:**

All documents, laws, or legal opinions indicating that the St. Bernard Parish School Board could sell a currently operational school.

**REQUEST NO. 9:**

All documents, laws, or legal opinions purporting to indicate that the Port of New Orleans could compel the involuntary transfer of W. Smith Junior Elementary School.

Please note that these requests are deemed continuing and will require periodic and regular supplementation of any responsive documents.

OFFICE OF THE DISTRICT ATTORNEY
FOR THE THIRTY-FOURTH JUDICIAL DISTRICT

HONORABLE PERRY M. NICOSIA

BY: _____

DAVID C. JARRELL (Bar No. 30907)
1101 W. St. Bernard Hwy.
Chalmette, LA 70043
Tel:  (504) 271-1658
Fax: (504) 279-2874
djarrell@stbda.org
Attorney for SBPSB

[ 52 / 55 ]

## THIRTY-FOURTH JUDICIAL DISTRICT

## FOR THE PARISH OF ST. BERNARD

### STATE OF LOUISIANA

**NUMBER:**    2 4 - 0 8 9 2    **DIVISION**

### THE ST. BERNARD PARISH SCHOOL BOARD
*Petitioner*

### VERSUS

## THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS
*Respondent*

**FILED:** _JUL 0 8 2024_    **CLERK:** _____

---

### *SERVICE INSTRUCTIONS*

---

PLEASE SERVE:

BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS

Through its statutory agent:
Ronald Wendel, Jr., President and Chief Executive Officer
1350 Port of New Orleans Place
New Orleans, LA 70130

[ 53 / 55 ]

## THIRTY-FOURTH JUDICIAL DISTRICT

## FOR THE PARISH OF ST. BERNARD

## STATE OF LOUISIANA

**NUMBER:**    2 4 - 0 8 9 2              **DIVISION**

### THE ST. BERNARD PARISH SCHOOL BOARD
*Petitioner*

### VERSUS

### THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS
**Respondent**

**FILED:** ___JUL 0 8 2024___    **CLERK:** _Justen Vincent_

---

### *SHOW CAUSE ORDER*

---

Considering the foregoing petition,

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that

defendant THE BOARD OF COMMISSIONERS OF THE PORT OF NEW

ORLEANS appear and show cause before this Court on the _21ˢᵗ_

day of _August_, 2024, at _9:30_ o'clock_A_.m.    why    a

preliminary injunction in the form and substance requested in the

foregoing petition should not issue, to be effective throughout

these proceedings.

[ 54 / 55 ]

**THUS DONE AND SIGNED this** _9th_ **day of** _July_ **, 2024**
**in Chalmette, Louisiana.**

JUDGE

Disclosure by the Court:
    My wife, Megan Suffern Roy, is an Assistant
District Attorney for the Parish of St. Bernard.
To the best of my knowledge, my wife is not
employed in this cause.                    7-9-24
                                            Judge

SERVICE ACCEPTED

JUL 0 9 2024

BY:

[ 55 / 55 ]





LOUISIANA INTERNATIONAL TERMINAL

MASTER PLAN LAYOUT - PHASE 1B

BOARD OF COMMISSIONERS
PORT OF NEW ORLEANS

PORT NOLA
THE PORT OF NEW ORLEANS





LEGEND

ASC
▦ 10,728 TGS
40 TGS LONG X 9 WIDE

SIDE PICKS
▦ 1,680 TGS

REEFER RACK
▦ 288 SLOTS

HML – 72
× LIGHTPOLES – 6
30' SINGLE LIGHTPOLE – 89
50' DOUBLE LIGHTPOLE – 37

▦ 160 EXTERNAL TRUCK SPOTS

▦ 180 INTERNAL TRACTOR SPOTS

□ SECURE PERIMETER

⊠ ELECTRICAL SUBSTATION

—— RMG CRANE RAIL

– – ASC CRANE RAIL

KEYNOTES
1 ADMINISTRATION BUILDING
2 POV PARKING – 441 SPACES
3 REEFER/OVERSIZED/LEAKING CONTAINER AREA – 100 SPACES
4 TRUCK QUEUING AREA – 33 SPACES
5 MAINTENANCE & REPAIR BUILDING
6 HARBOR POLICE STATION
7 EQUIPMENT PARKING
8 REEFER WASH FACILITY
9 BUFFER
10 ENTRY OCR & WEIGH IN MOTION SCALE
11 ENTRY GATE INTERCHANGE CANOPY – 12 LANES
12 PROVISIONAL STORAGE AREA – 8 ACRES
13 EXIT GATE INTERCHANGE CANOPY/OCR – 10 LANES
14 DRIVERS ASSISTANCE STATION
15 VESSEL OPERATIONS BUILDING
16 EMERGENCY ACCESS GATE
17 ROADABILITY
18 RFID READER
19 TRUCK WAITING AREA – 32 SPACES
20 POV/VENDOR GATE
21 EXIT GATE RFM'S – 3 LANES
22 CBP SECONDARY INSPECTION AREA
23 INTERMODAL YARD RFM – 1 LANE
24 DRAINAGE CANAL

25 PUMP STATION
26 BERM
27 ENTERGY SUBSTATION
28 MAIN ELECTRICAL SWITCH GEAR
29 CONTAINER REPAIR STATION
30 CROSS-DOCK INSPECTION FACILITY
31 RAIL OPERATIONS BUILDING
32 DRIVER REST STATION
33 CBP NII AREA
34 USDA FUMIGATION AREA
35 REEFER GENSET MAINTENANCE & FUELING AREA
36 BIKE PATH
37 SEWAGE TREATMENT PLANT
38 BAD-ORDER TRACK
39 MAIN SEWAGE PUMP STATION
40 WATER BOOSTER PUMP
41 STORAGE POND – 25 ACRE
42 LOCOMOTIVE FUELING TRACK
A RAMP A
B RAMP B
C RAMP C

OVERALL SITE PLAN – PHASE 3
SCALE: 1" = 500'

SCALE: 1" = 500'

BOARD OF COMMISSIONERS
PORT OF NEW ORLEANS
PARISH:
PORT PROJ ENG:
DATE:

PORT NOLA
THE PORT OF NEW ORLEANS

LOUISIANA INTERNATIONAL TERMINAL
MASTER PLAN LAYOUT – PHASE 3

WO: W12000    DWG NO: 1400001G-103A    REV:

PROJECT MANAGER
DESIGNED BY
CHECKED BY
DRAWN BY
APPROVED BY

CONSULTING ENGINEERS:

ISSUE | DATE | DESCRIPTION | INT | PROJ NO
REVISION BLOCK

Case 2:24-cv-01952-EEF-MBN   Document 1-1   Filed 08/06/24   Page 60 of 70

# CITATION
# THESE PAPERS WERE FILED W/O COST



**THE ST. BERNARD PARISH SCHOOL
BOARD**

**VERSUS**

**THE BOARD OF COMMISSIONERS OF
THE PORT OF NEW ORLEANS**

*Case:* **24-0892**

**Division: "D"**
34ᵗʰ *Judicial District Court*
*Parish of St. Bernard*
*State of Louisiana*

---

TO: **THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS
THROUGH ITS STATUTORY AGENT:
RONALD WENDELL, JR., PRESIDENT AND CHIEF EXECUTIVE OFFICER
1350 PORT OF NEW ORLEANS PLACE
NEW ORLEANS, LA 70130**

YOU HAVE BEEN SUED. Attached to this Citation is a certified copy of **PETITION FOR A PRELIMINARY AND PERMANENT INJUNCTION.**

You must either DO WHAT THE PETITION ASKS, OR WITHIN TWENTY-ONE (21) DAYS after you have received these documents, you must file an answer or other legal pleadings in the office of the Clerk of Court at the St. Bernard Parish Courthouse, Chalmette, LA 70043.

If you do not do what the Petition asks, or if you do not file an answer or legal pleading within TWENTY-ONE (21) DAYS, a judgment may be entered against you without further notice.

**It is further ordered to appear on the 21ˢᵀ day of AUGUST 2024, at 9:30, a.m., in division "D" ordered by JUDGE DARREN M. ROY.**

This Citation was issued by the Clerk of Court for St. Bernard Parish, Louisiana on the 9ᵀᴴ day of JULY 2024.

KNV/ST. BERNARD PARISH SCHOOL BOARD

Randy S. Nunez
Clerk of Court
Parish of St. Bernard

By: **/s/ Kristen Vincent**
Deputy Clerk

www.stbclerk.com

---

**DOMICILIARY**
Received Parish of St. Bernard on the _____ day of _____, _____ and on the _____ day of _____, _____, I served a copy of the within _____ by leaving the same at _____ domicile _____ this Parish in the hands of _____ a person apparently over the age of 14 years living and residing in said domicile, whose name and other facts connected with this service I learned by interrogating the same _____ the said _____ being absent from _____ domicile at the time of said service.
Returned Parish of St. Bernard _____

_____
Sheriff

**PERSONAL**
Received Parish of St. Bernard on the _____ day of _____, _____ and on the _____ day of _____, _____, I served a copy of the within _____ on _____ on _____ at _____ this Parish his usual place of domicile, in the Parish of St. Bernard, by handling and delivering the same to in Returned Parish of St. Bernard _____

_____
Sheriff



# PERRY M. NICOSIA, DISTRICT ATTORNEY
## 34th JUDICIAL DISTRICT
### Parish of St. Bernard
1101 West St. Bernard Hwy., Chalmette, Louisiana  70043
Phone 504-271-1658      Fax 504-279-2874

April 25, 2024

**FILED**

JUL 16 2024

CLERK OF COURT
ST. BERNARD PARISH

/S/ SHANNON A. WHITFIELD

<u>Via hand-delivery</u>
Randy S. Nunez
Clerk of Court for the Parish of St. Bernard
1101 W. St. Bernard Hwy.
Chalmette, LA  70043

Re:   SBPSB v. Port of New Orleans, 24-0892; Div. "D"

Mr. Nunez:

The above-captioned case is set for a hearing on August 21, 2024.   Please issue subpoenas for the attendance of the following witnesses:

1.    Ronald Wendel, Jr., 1350 Port of New Orleans Place, New Orleans, LA  70130
2.    Sarah Porteous, 1350 Port of New Orleans Place, New Orleans, LA  70130
3.    Walter Leger, 1350 Port of New Orleans Place, New Orleans, LA  70130

Yours truly,

DAVID C. JARRELL



# PERRY M. NICOSIA, DISTRICT ATTORNEY
## 34th JUDICIAL DISTRICT
### Parish of St. Bernard
1101 West St. Bernard Hwy., Chalmette, Louisiana   70043
Phone 504-271-1658        Fax 504-279-2874

July 16, 2024

**FILED**

JUL 16 2024

CLERK OF COURT
ST. BERNARD PARISH
/S/ SHANNON A. WHITFIELD

Via hand-delivery:
Clerk of Court
Parish of St. Bernard
1101 W. St. Bernard Hwy.
Chalmette, LA 70043

Re:    SBPSB v. Port of New Orleans
       No. 24-0892; Div. D

Dear Mr. Nunez:

Please issue a *subpoena duces tecum* for the documents identified on Exhibit A and returnable on August 21, 2024 to:

BOARD OF COMMISSIONERS
OF THE PORT OF NEW ORLEANS
Through its statutory agent:
Ronald Wendel, Jr., President and Chief Executive Officer
1350 Port of New Orleans Place
New Orleans, LA 70130

Sincerely,

/s/ David C. Jarrell

DAVID C. JARRELL

## THIRTY-FOURTH JUDICIAL DISTRICT

## FOR THE PARISH OF ST. BERNARD

## STATE OF LOUISIANA

**NUMBER: 24-0892**        **DIVISION: D**

### THE ST. BERNARD PARISH SCHOOL BOARD
*Petitioner*

### VERSUS

### THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS
*Respondent*

FILED: _JUL 1 6 2024_____      CLERK: _____

/S/ SHANNON A. WHITFIELD

---

*EXHIBIT A*

---

To:   BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS
      Through its statutory agent:
      Ronald Wendel, Jr., President and Chief Executive Officer
      1350 Port of New Orleans Place
      New Orleans, LA 70130

### I.

### DEFINITIONS

Unless otherwise indicated, as used herein:

1. "The Board" shall refer to the Board of Commissioners of the Port of New Orleans.

2. "LIT" shall refer to the proposed Louisiana International Terminal.

### II.

### RECORDS REQUESTED

Pursuant to the *subpoena duces tecum* issued herewith to the custodian of records of The Board of Commissioners of the Port of New

Orleans, respondent is hereby ordered to produce the following documents and/or tangible evidence:

(1)  A copy of all documents discussing any potential adverse impact by the LIT facility on the students, teachers, and other faculty of W. Smith Junior Elementary School;

(2)  A copy of all alternate designs contemplating the development of the LIT facility without the potential acquisition of the W. Smith Junior Elementary School site;

(3)  A copy of all Board resolutions, authorizations, or other such similar directives of the Board to commence with the development of the LIT facility around the existing W. Smith Junior Elementary School;

(4)  A copy of all documents discussing or detailing the reasons why the Board did not secure and/or attempt to secure the acquisition of the W. Smith Junior Elementary School site prior to or concurrent with the acquisition of all of the parcels that will comprise the LIT facility;

(5)  A copy of all documents discussing or detailing the reasons why the Board did not secure and/or attempt to secure the acquisition of the W. Smith Junior Elementary School site prior to seeking to develop the LIT facility;

(6)  A copy of all documents discussing or detailing whether the St. Bernard Parish School Board has the authority to sell or otherwise transfer W. Smith Junior Elementary School;

(7) A copy of all documents identifying any and all other parcels of property which the Board has considered acquiring within a one mile radius of the W. Smith Junior Elementary School site;

(8) A copy of all documents discussing or detailing the estimate value and/or estimated replacement value of the W. Smith Junior Elementary site;

(9) A copy of all documents permitting applications issued to any regulatory agency from whom the Board must obtain approval to develop the LIT facility and which depict the continued presence of the W. Smith Junior Elementary School site as it currently exists or contemplates the relocation or removal of the W. Smith Junior Elementary school from its present location;

(10) A copy of all documents identifying the specific funds earmarked or allocated for the acquisition of the W. Smith Junior Elementary School site;

(11) A copy of all communication with any person, firm, or entity related to any proposed re-location of the W. Smith Junior Elementary School;

(12) A copy of all permits issued to date related to the LIT facility;

(13) A copy of all documents related to any work performed or to be performed at the LIT facility in the calendar year 2024, including, but not limited to, contracts, invoices, payment receipts, surveys, work summaries, payment applications, and all such similar documents; and

(14)  A copy of all contracts, draft contracts, proposals, requests for proposals, invitation for bids, and all such similar documents, by any person, firm, or entity residing or operating in St. Bernard Parish to perform any work at the LIT facility.

> **OFFICE OF THE DISTRICT ATTORNEY**
> **FOR THE THIRTY-FOURTH JUDICIAL DISTRICT**
>
> **HONORABLE PERRY M. NICOSIA**
>
> BY:  _____
> **DAVID C. JARRELL** (Bar No. 30907)
> 1101 W. St. Bernard Hwy.
> Chalmette, LA 70043
> Tel:  (504) 271-1658
> Fax: (504) 279-2874
> djarrell@stbda.org
> Attorney for SBPG

## CERTIFICATE OF SERVICE

I do certify that on this 16th day of July, 2024 I have served a copy of the above and foregoing on all counsel of record by depositing same in the United States Mail, properly addressed and postage prepaid, to all counsel of record.

_____
DAVID C. JARRELL

# SUBPOENA

## **THESE PAPERS WERE FILED WITHOUT COSTS**

---

**THE ST. BERNARD PARISH SCHOOL BOARD**

**VERSUS**

**THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS**



*Case No.:* **24-0892**

*Division:* **" D "**

*34th Judicial District Court*
*Parish of St. Bernard*
*State of Louisiana*

---

**TO:   RONALD WENDEL, JR.**
**1350 PORT OF NEW ORLEANS PLACE**
**NEW ORLEANS, LA  70130**

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE THE HONORABLE DARREN M. ROY, JUDGE, 34TH JUDICIAL DISTRICT COURT SITTING IN AND FOR THE PARISH OF ST. BERNARD, ON <u>WEDNESDAY, THE 21ST DAY OF AUGUST, 2024 AT 9:30 O'CLOCK A.M</u>.

TO TESTIFY THE TRUTH IN THE CONTROVERSY PENDING BETWEEN:

*THE ST. BERNARD PARISH SCHOOL BOARD*

*Plaintiff*

*VERSUS*

*THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS*

*Defendant*

AND HEREIN YOU ARE NOT TO FAIL, UNDER PENALTY OF TWO HUNDRED FIFTY DOLLARS, BY ORDER OF THE COURT.

SAW/ **STBP SCHOOL BOARD**

*www.stbclerk.com*

DATED:  JULY 17, 2024

RANDY S. NUNEZ
CLERK OF COURT

BY: _____

REQUESTED BY:
DAVID C. JARRELL

Case 2:24-cv-01952-EEF-MBN    Document 1-1    Filed 08/06/24    Page 68 of 70

# SUBPOENA

## **THESE PAPERS WERE FILED WITHOUT COSTS**

---

**THE ST. BERNARD PARISH SCHOOL BOARD**

**VERSUS**

**THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS**



Case No.: **24-0892**

Division: **" D "**

*34th Judicial District Court*
*Parish of St. Bernard*
*State of Louisiana*

---

**TO:   SARAH PORTEOUS**
**1350 PORT OF NEW ORLEANS PLACE**
**NEW ORLEANS, LA  70130**

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE THE HONORABLE DARREN M. ROY, JUDGE, 34TH JUDICIAL DISTRICT COURT SITTING IN AND FOR THE PARISH OF ST. BERNARD, ON <u>WEDNESDAY, THE 21ST DAY OF AUGUST, 2024 AT 9:30 O'CLOCK A.M</u>.

TO TESTIFY THE TRUTH IN THE CONTROVERSY PENDING BETWEEN:

*THE ST. BERNARD PARISH SCHOOL BOARD*

*Plaintiff*

*VERSUS*

*THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS*

*Defendant*

AND HEREIN YOU ARE NOT TO FAIL, UNDER PENALTY OF TWO HUNDRED FIFTY DOLLARS, BY ORDER OF THE COURT.

SAW/ **STBP SCHOOL BOARD**

*www.stbclerk.com*

DATED:  JULY 17, 2024

RANDY S. NUNEZ
CLERK OF COURT

BY: _Randy S. Nunez_

REQUESTED BY:
DAVID C. JARRELL

Case 2:24-cv-01952-EEF-MBN    Document 1-1    Filed 08/06/24    Page 69 of 70

# SUBPOENA

## **THESE PAPERS WERE FILED WITHOUT COSTS**



THE ST. BERNARD PARISH SCHOOL
BOARD

VERSUS

THE BOARD OF COMMISSIONERS OF
THE PORT OF NEW ORLEANS

Case No.: **24-0892**

Division: **" D "**

*34th Judicial District Court*
*Parish of St. Bernard*
*State of Louisiana*

TO:   **WALTER LEGER**
**1350 PORT OF NEW ORLEANS PLACE**
**NEW ORLEANS, LA  70130**

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE THE HONORABLE DARREN M. ROY, JUDGE, 34TH JUDICIAL DISTRICT COURT SITTING IN AND FOR THE PARISH OF ST. BERNARD, ON <u>WEDNESDAY, THE 21ST DAY OF AUGUST, 2024 AT 9:30 O'CLOCK A.M.</u>

TO TESTIFY THE TRUTH IN THE CONTROVERSY PENDING BETWEEN:

*THE ST. BERNARD PARISH SCHOOL BOARD*

*Plaintiff*

*VERSUS*

*THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS*

*Defendant*

AND HEREIN YOU ARE NOT TO FAIL, UNDER PENALTY OF TWO HUNDRED FIFTY DOLLARS, BY ORDER OF THE COURT.

SAW/ **STBP SCHOOL BOARD**

*www.stbclerk.com*

DATED:  JULY 17, 2024

RANDY S. NUNEZ
CLERK OF COURT

BY: *Randy S. Nunez*

REQUESTED BY:
DAVID C. JARRELL

# WRIT OF SUBPOENA DUCES TECUM

## **THESE PAPERS WERE FILED WITHOUT COSTS**

*THE ST. BERNARD PARISH SCHOOL BOARD*

*VERSUS*

*THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS*

*Case No.:* **24-0892**

*Division:* **" D "**

*34th Judicial District Court*
*Parish of St. Bernard*
*State of Louisiana*

*THE STATE OF LOUISIANA TO:*  **BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS THROUGH ITS STATUTORY AGENT: RONALD WENDEL, JR., PRESIDENT AND CHIEF EXECUTIVE OFFICER 1350 PORT OF NEW ORLEANS PLACE NEW ORLEANS, LA 70130**

GREETINGS:

YOU ARE COMMANDED in the name of the STATE OF LOUISIANA, and of the 34th JUDICIAL DISTRICT COURT for the PARISH OF ST. BERNARD to **produce in open court** on <u>WEDNESDAY, AUGUST 21, 2024</u> at <u>9:30 A.M.</u> or any other date to which this case may be continued, the following to-wit:

## SEE ATTACHED EXHIBIT A

And herein fail not under penalty of the law.

Witness the Honorable DARREN M. ROY, JUDGE, of our Said Court, Section " D ", this 17TH day of JULY, in the year of Our Lord two thousand and four.

SAW/**STBP SCHOOL BOARD**

RANDY S. NUNEZ, CLERK OF COURT

BY: *Randy S. Nunez*

REQUESTED BY:
DAVID C. JARRELL

*www.stbclerk.com*