2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

**STATE OF LOUISIANA**
**CIVIL DISTRICT COURT**
**FOR THE PARISH OF ORLEANS**

CASE NO. _____          SECTION: _____

ALORA MADERE, in her official capacity as CUSTODIAN OF RECORDS
for the BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS

v.

ST. BERNARD PARISH GOVERNMENT

and

DAVID C. JARRELL

FILED: _____          _____
                                    DEPUTY CLERK

**MOTION AND INCORPORATED MEMORANDUM**
**FOR PROTECTIVE ORDER AND SUMMARY PROCEEDING**

NOW INTO COURT, through undersigned counsel, comes movant, Alora Madere, in her official capacity as Custodian of Records for the Board of Commissioners of the Port of New Orleans (hereinafter, "Port NOLA"). Port NOLA seeks a protective order pursuant to La. C.C.P. art. 1426 and La. R.S. 44:4.1(B)(37). Under the Public Records Law, Port NOLA is entitled to have this matter heard summarily. La. R.S. 44:35(C); *accord* La. C.C.P. art. 2592(13).

On August 4, 2023, Port NOLA was named as the sole defendant in a lawsuit brought by the St. Bernard Parish Government ("St. Bernard"), styled *St. Bernard Parish Government v. Board of Commissioners for the Port of New Orleans*, No. 23-1006, in the 34th Judicial District for the Parish of St. Bernard (the "Lawsuit"). A week after filing suit, on August 11, 2023, counsel for St. Bernard (Mr. Jarrell), without identifying himself as such but rather submitting on letterhead as a "private" attorney, submitted sixteen public records requests to Port NOLA pursuant to the Louisiana Public Records Law, La. R.S. 44:1 *et seq.* The requests are attached as ***Exhibits B through E***. These requests bear directly on the allegations made in the Lawsuit, even going so far as to seek documents relating to "contentions" allegedly made by Port NOLA. Port NOLA responded accordingly acknowledging receipt of the requests on August 18, 2023. Port NOLA

VERIFIED

Kasie Jiles

2023 AUG 28  P 12:03

2023-09600

# C

## Section 10

**FILED**

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

was subsequently served with the Lawsuit on August 24, 2023, almost two weeks after submission of the public records requests.

Under Article 1426, a court may order that "the discovery may be had only on specified terms and conditions, including a designation of the time or place." La. C.C.P. art. 1426. Likewise, an order issued pursuant to Article 1426 is a statutory exception or limitation "to the laws pertaining to public records." La. R.S. 44:4.1(B)(37).

Port NOLA seeks a protective order to align its obligations with the Public Records Law with its civil discovery rights and obligations under the Louisiana Code of Civil Procedure. Litigants should not be allowed to use the Public Records Law as an end-run around the discovery rights and obligations set forth in the Code of Civil Procedure (La. C.C.P. art. 1421 *et seq.*). Moreover, absent a protective order, St. Bernard's use of the Public Records Law in lieu of civil discovery risks judicial inefficiencies and inconsistent outcomes. Discovery in the Lawsuit would be refereed by the presiding judge in that matter. Disputes under the Public Records Law would be litigated in an *ad hoc* fashion before a judge of this Court, since the Port NOLA records are maintained in Orleans Parish, which is also the domicile of the Port NOLA custodian.

The protective order Port NOLA seeks would simply limit St. Bernard and its counsel to the discovery tools available to them under the Code of Civil Procedure. It would likewise provide that any public records requests submitted to it by St. Bernard, its counsel, or its representatives, be deemed discovery in the Lawsuit under the Code of Civil Procedure and treated as such, notwithstanding any provisions to the contrary in the Public Records Law. Doing so will align Port NOLA's rights and obligations under the Public Records Law with its rights and obligations under the Code of Civil Procedure. It will also avoid judicial inefficiency by placing both discovery and public record questions under the same set of procedures and before the same judge.

WHEREFORE, Port NOLA moves this Court for entry of a protective order in accordance with Article 1426 of the Code of Civil Procedure and La. R.S. 44:4.1(B)(37).

### INCORPORATED MEMORANDUM IN SUPPORT

**I.    Background**

Port NOLA is in the early stages of developing the Louisiana International Terminal, a $1.8 billion international shipping container terminal to be located in Violet, Louisiana. *See generally* https://louisianainternationalterminal.com/. In connection with this project, Port NOLA

# C

## Section 10

has submitted permit applications with federal and state regulators, including the U.S. Army Corps of Engineers. Port NOLA anticipates that permitting decisions will be made in 2025. Port NOLA anticipates phased operations to begin sometime in 2028 if it obtains permits and begins construction in 2025.

St. Bernard filed its Lawsuit against Port NOLA on August 4, 2023. A copy of the Lawsuit attached hereto as ***Exhibit A***. Among other things, the Lawsuit alleges that (1) Port NOLA lacks jurisdiction to take any actions within St. Bernard Parish (including developing the Louisiana International Terminal), Lawsuit ¶¶ 47-49; (2) actions taken by Port NOLA in St. Bernard Parish be deemed absolute nullities, *id.* ¶¶ 50-57; and (3) Port NOLA must return property purchased or leased in St. Bernard Parish (including property purchased from the Port of St. Bernard and private landowners). *Id.* ¶ 68. The Lawsuit was signed by David C. Jarrell as the attorney for St. Bernard. *Id.* at p. 44.

A week later, St. Bernard's counsel (Mr. Jarrell) sent Port NOLA four separate sets of public records requests. *See **Exhibits B-E***, attached hereto. These public records request seek, among other things:

- leases between Port NOLA and other parties relating to immovable property in St. Bernard Parish. **Ex. B, Ex. E (1-3)**;

- documents relating to Port NOLA's "jurisdiction in St. Bernard Parish." **Ex. C**;

- documents relating to the development of the Louisiana International Terminal, including designs, contracts, permit applications, and agreements with private landowners. **Ex. D**; and

- documents relating to the Port NOLA Board of Commissioners. **Ex. E**.

Reading these requests, one might assume they were requests for production relating to the Lawsuit and in accordance with Code of Civil Procedure article 1461. However, they are not.

Under the Code of Civil Procedure, St. Bernard could not serve them on Port NOLA until after it served the Lawsuit. La. C.C.P. art. 1462(A). Port NOLA would have thirty days following service of discovery to provide written responses. *Id.* art. 1462(B)(1). Additionally, such requests would be subject to limitations and exceptions to discovery under the Code of Civil Procedure.

Instead, St. Bernard's counsel submitted these requests under the Public Records Law in a blatant attempt to circumvent the rules of discovery. Under the Public Records Law, delays

relating to the service of the Lawsuit would not apply. Also, under the Public Records Law, a public entity (such as Port NOLA) must respond in five days (as opposed to thirty), La. R.S. 44:32, 44:35, and its custodian could face personal liability should he/she be found to have violated the Public Records Law. La. R.S. 44:35(E), 44:37. While the Public Records Law promotes transparency in government and is interpreted broadly in that concern, it should not be allowed to be weaponized as a means of placing public entities at a disadvantage in litigation as compared to private-party litigants. That an employee of the public entity – the same individual who signed the Lawsuit, no less – did so under the guise as a private citizen is more disturbing.

Recognizing that St. Bernard seeks to utilize the Public Records Law to conduct discovery concerning the Lawsuit, Port NOLA filed this motion under La. R.S. 44:35(C), 44:35(D), and La. C.C.P. arts. 2592-2593 to obtain a protective order aligning its rights and obligations as a defendant in a lawsuit with its rights and obligations under the Public Record Law.

## II.    Law And Argument

The Public Records Law provides that

> The legislature further recognizes that there exist exceptions, exemptions, and limitations to the laws pertaining to public records throughout the revised statutes and codes of this state. Therefore, the following exceptions, exemptions, and limitations are hereby continued in effect by incorporation into this Chapter by citation:
>
> ...
>
> (37) Code of Civil Procedure Articles 891, 1426

La. R.S. 44:4.1(B). Similarly, a records custodian has the right to bring suit in connection with any public records request to determine whether an exemption to the Public Records Law applies. La. R.S. 44:35(C) & (D)(2).

Under Article 1426 of the Code of Civil Procedure, a Court may issue a protective order limiting the "terms and conditions" or "methods" of discovery where the moving party demonstrates good cause for such limitations. La. C.C.P. art. 1426(A) & (A)(2)-(3). One basis for "good cause" is a finding that the moving party may be subject to "undue burden or expense" absent the protective order. *See also* La. C.C.P. 1420(B)(3) (discussing certification that discovery is not "unduly burdensome").



FILED

2023 AUG 25  P 05:19
CIVIL
DISTRICT COURT

Absent a protective order in this case, St. Bernard's efforts to utilize the Public Records Law as an end-run around the discovery limitations in the Code of Civil Procedure will unduly burden both Port NOLA and the court system.

First, as a public entity, Port NOLA would be required under the Public Records Law to respond to public records requests in five days, as opposed to the thirty days provided for in the Code of Civil Procedure. This accelerated procedure is not meant to handle the depth and volume of materials a party such as St. Bernard seeks in connection with a Lawsuit.

Second, these requests are not required to go through any litigation counsel Port NOLA may retain in connection with the Lawsuit. They can simply be submitted by St. Bernard counsel directly to Port NOLA's records custodian, and Port NOLA loses any ability to respond and object as provided under La. C.C.P. 1462 with respect to written discovery.

Third, the Public Records Law does not require persons submitting public records requests to certify those requests as required under Article 1420 of the Code of Civil Procedure. Instead, it is the burden of the custodian to demonstrate that the request "would substantially disrupt required government operations." La. R.S. 44:32(A)(2).

Fourth, suits under the Public Records Law must be brought against the records custodian (La. R.S. 44:35), and such suits must be brought in Civil District Court in Orleans Parish (where Port NOLA is domiciled). La. R.S. 13:5104. The Port NOLA records custodian is not a party to the Lawsuit, which is pending in the 34th Judicial District Court for the Parish of St. Bernard. As a result, any challenge to the scope of a public records request response will be litigated in this Court, and not before the judge overseeing the Lawsuit. Consequently, Port NOLA will have to expend additional resources responding to public records disputes in one forum, when such disputes could otherwise be managed in a different forum pursuant to the discovery process.

Equally important, judges in this Court will likely be strangers to the underlying Lawsuit, and such judges will be asked to weigh in on what are effectively discovery disputes without any context or understanding of the status of the underlying litigation. This scenario risks duplication of resources and the possibility of inconsistent rulings among judges.

Entering a protective order in this case would also alleviate one further risk. Just like Port NOLA, St. Bernard is subject to the Public Records Law. Absent some ruling providing that these public entities conduct themselves in accordance with Code of Civil Procedure's requirements for

**FILED**

2023 AUG 25  P 05:19
CIVIL
DISTRICT COURT

discovery, there is a risk of a "public records war" where Port NOLA could also submit Lawsuit-related document requests in the form of public records requests, and St. Bernard would be compelled to respond to them in accordance with the Public Records Law. In such a case, disputes over Port NOLA's requests to St. Bernard would be litigated in the 34th Judicial District Court, while disputes over St. Bernard's requests to Port NOLA would be litigated in this Court. And, because all such matters must be decided on a summary docket, La. R.S. 44:35, the risk of inconsistent results across multiple forums will be exacerbated by the accelerated timeline. Such a situation is clearly not the intent of the Public Records Law, as it would result in both judicial inefficiency and unnecessary expenses to, not one, but two public bodies, all ultimately at the expense of Louisiana taxpayers.

These burdens and risks can be avoided by the entry of a protective order in connection with the public records request St. Bernard's counsel submitted to Port NOLA. This Court can simply direct documents related to the Lawsuit be protected such that they are discoverable under the discovery procedures set forth in the Code of Civil Procedure with respect to document requests (and other discovery requests) they may seek in relation to the Lawsuit or the allegations therein. St. Bernard can reformat its public records requests in accordance with Articles 1461-1462 and reserve them as allowed by those articles. Doing so would not prejudice St. Bernard – it would simply require them to obey the same rules any litigant must follow when conducting discovery relating to a lawsuit. Doing so would also avoid inconsistent obligations owed by Port NOLA as a litigant in a civil lawsuit and as a public body. The protective order would simply place the parties on the same footing as any other litigants in any other civil litigation.

**III.  Conclusion**

The Public Records Law is not intended to provide litigants with an end-run around the discovery limits imposed by the Code of Civil Procedure. Yet, St. Bernard has attempted just such an end run in connection with the Lawsuit. It seeks to take litigation-related discovery under the guise of privately-issued public records requests and, in so doing, imposes undue burdens on Port NOLA. A protective order would cure the burdens imposed on Port NOLA without prejudicing St. Bernard. Rather, it would restore the parties to their status as litigants, notwithstanding the special obligations the Public Records Law imposes on public bodies outside of litigation.

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

Respectfully submitted,

L. ETIENNE BALART (#24951)
MICHAEL C. DREW (#30884)
LAUREN C. MASTIO (#33077)
TAYLOR K. WIMBERLY (#38942)
Jones Walker LLP
201 St. Charles Avenue – 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8584
E-mail:       ebalart@joneswalker.com
              mdrew@joneswalker.com
              lmastio@joneswalker.com
              twimberly@joneswalker.com

**_Counsel for Board of Commissioners for the Port of New Orleans_**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for Plaintiffs by email and/or placing a copy of same in the United States mail, postage prepaid and properly addressed, on this 25th day of August, 2023.

LAUREN C. MASTIO

E-Filed                #101600142\2

2023-09600

C

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

## STATE OF LOUISIANA
## CIVIL DISTRICT COURT
## FOR THE PARISH OF ORLEANS

CASE NO. _____                    SECTION: _____

ALORA MADERE, in her official capacity as CUSTODIAN OF RECORDS
for the BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS

v.

ST. BERNARD PARISH GOVERNMENT

and

DAVID C. JARRELL

FILED: _____          _____
                                              DEPUTY CLERK

### RULE TO SHOW CAUSE

**CONSIDERING THE FOREGOING** *Motion and Incorporated Memorandum for Protective Order and Summary Proceeding* filed by movant, Alora Madere, in her official capacity as Custodian of Records for the Board of Commissioners of the Port of New Orleans ("Port NOLA"),

**IT IS HEREBY ORDERED** that David C. Jarrell show cause on the *20th* day of *October*, 2023, at *9* o'clock *a*.m. why the *Motion and Incorporated Memorandum for Protective Order and Summary Proceeding* filed on behalf of Port NOLA should not be granted as prayed for.

New Orleans, Louisiana, this *6th* day of *September*, 2023.

~~DISTRICT JUDGE~~ (A)Yates, Comt Cir

**PLEASE SERVE:**

David C. Jarrell
9101 W. St. Bernard Hwy.
Chalmette, LA 70043

A TRUE COPY

DEPUTY CLERK - MINUTE CLERK
CLERK OF CIVIL DISTRICT COURT
PARISH OF ORLEANS, STATE OF LA

2023-09600

# C
## Section 10

**FILED**

2023 AUG 25  P 05:19
CIVIL
DISTRICT COURT

## THIRTY–FOURTH JUDICIAL DISTRICT

### FOR THE PARISH OF ST. BERNARD

### STATE OF LOUISIANA

**NUMBER:**

23 - 10 0 6

**DIVISION:**

### ST. BERNARD PARISH GOVERNMENT

### VERSUS

### BOARD OF COMMISSIONERS FOR THE PORT OF NEW ORLEANS

FILED: _AUG 0 1 2023_     CLERK: _Randy S. Nunez_

@ 8:32 AM.

*PETITION FOR DECLARATORY RELIEF and*
*PETITION FOR A PERMANENT INJUNCTION*

NOW INTO COURT, through undersigned counsel, comes ST. BERNARD PARISH GOVERNMENT, which   respectfully submits as follows:

## PART I:

## PARTIES

**1.**

Made petitioner herein is:

(1)  **ST. BERNARD PARISH GOVERNMENT**, a political subdivision of the State of Louisiana with territorial boundaries that include all of St. Bernard Parish.

**2.**

[ 1 / 45 ]

**EXHIBIT A**

E-Filed

2023-09600

**C**

Section 10

**FILED**

2023 AUG 25  P 05:19
CIVIL
DISTRICT COURT

Made defendants herein are:

(1)  **BOARD OF COMMISSIONERS FOR THE PORT OF NEW
ORLEANS** ("the Port of New Orleans"), a political
subdivision of the State of Louisiana located in and with
territorial boundaries that it claims to include all of
Orleans Parish, Jefferson Parish, and St. Bernard Parish.

## PART II:

## JURISDICTION AND VENUE

### 3.

This Court has jurisdiction over defendants under Civil Code of
Procedure Article 6 and Louisiana Revised Statutes, Title 13, Section
5104.

### 4.

The Thirty-Fourth Judicial District is the appropriate forum as
to defendant the Port of New Orleans under Louisiana Revised
Statutes, Title 13, Section 5104(B) as the Port of New Orleans claims
that its territorial jurisdiction includes all of St. Bernard Parish
which said parish is located entirely within the Thirty-Fourth
Judicial District.

[ 2 / 45 ]

E-Filed

2023-09600

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

# C
## Section 10

## PART III:

## FACTUAL AND LEGAL BACKGROUND

### 5.

The boundaries of the Parish of St. Bernard were established and fixed by Act 23 of 1975.

### 6.

On April 20, 1974, the Louisiana Constitution of 1974 was adopted and became effective on January 1, 1975.

### 7.

Article 6 § 5 of the Louisiana Constitution of 1974 provides in relevant part:

> (E) **Structure and Organization; Powers; Functions.** A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.

### 8.

In accordance with the Constitution of 1974, on November 8, 1988 the Parish of St. Bernard adopted a Home Rule Charter establishing a president-council form of government.

[ 3 / 45 ]

E-Filed

2023-09600

C

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

9.

The Port of New Orleans was statutorily created by Act 70 of 1896, a copy of which is attached hereto as Exhibit 1.

10.

Act 70 of 1896 established that the board of the Port of New Orleans was to be selected from a tri-parish area consisting of Orleans, St. Bernard, and Jefferson parishes.

11.

Article 6 § 43 of the Louisiana Constitution of 1974 provided for the continuing existence of all then existing ports.  Specifically, the Constitution provided:

§43.  Port Commissions and Districts

Section 43. All deep-water port commissions and all deep-water port, harbor, and terminal districts as organized and constituted on January 1, 1974, including their powers and functions, structure and organization, and territorial jurisdiction, are ratified and confirmed and shall continue to exist, except that

(1) The legislature by law may grant additional powers and functions to any such commission or district and may create new port commissions or port, harbor, and terminal districts.

(2) Only by law enacted by the favorable vote of two-thirds of the elected members of each

[ 4 / 45 ]

E-Filed

# C
## Section 10

FILED

2023 AUG 25  P 05:19
CIVIL
DISTRICT COURT

house, may the legislature consolidate or abolish any such commission or district or diminish, reduce, or withdraw from any such commission or district any of its powers and functions and affect the structure and organization, distribution, and redistribution of the powers and functions of any such commission or district, including additions to or reductions of its territorial jurisdiction.

12.

Prior to the adoption of the Constitution of 1974, Act 228 of 1960, was passed under a similar provision creating the St. Bernard Port, thereby reducing the territorial jurisdiction of the Port of New Orleans.

13.

In 1989, a dispute arose between the Port of New Orleans and the Port of St. Bernard as to which agency had jurisdiction over a proposed international commerce facility in the St. Bernard Parish.

14.

The dispute as to the jurisdiction of the St. Bernard Port naturally evolved into a lawsuit entitled *River Marine Contractors, Inc. v. Board of Commissioners for the St. Bernard Port, Harbor, and Terminal District and the Board of Commissioners for the Port of New Orleans*.

15.

[ 5 / 45 ]

E-Filed



Section 10

FILED

2023 AUG 25  P 05:19

CIVIL
DISTRICT COURT

The district Court rendered a judgment declaring that the St. Bernard Port "has authority to regulate operation of all commerce, *including international commerce*, where such is conducted by or through a facility wholly owned."

## 16.

The New Orleans Port appealed the judgment of the district Court.

## 17.

The Fourth Circuit Court of Appeal ultimately reversed the judgment of the district court declaring that the St. Bernard Port only had jurisdiction over cargo "whose origin and destination is wholly within the continental United States, leaving the regulation of international commerce to the Port of New Orleans."  *River Marine Contractors, Inc. v. Board of Commissioners for the St. Bernard Port, Harbor, and Terminal District, et al*, 92-CA-0526 (La.App. 4 Cir. 09/17/1992), 605 So.2d 654.

## 18.

The appellate court explicitly invited the legislature to correct any erroneous interpretation of the law:

> [I]f ... the legislature erred in expressing its intention, it is not the function of the judicial branch to correct such an error, unless the error creates an ambiguity. Such an error (if

[ 6 / 45 ]

E-Filed

2023-09600

# C
## Section 10

**FILED**

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

one occurred) should be corrected by the
legislature.

### *19.*

The appellate court also ominously recognized:

> No one contests the fact that the Port of New
> Orleans has general regulatory authority over
> the parishes of Orleans, Jefferson and St.
> Bernard [see Act 70 of 1896 which provisions
> as amended are now contained in LSA–R.S.
> 34:1 et seq.;   *State ex rel. Tallant v. Board of
> Com'rs of Port of New Orleans*, 161 La. 361, 108
> So. 770 (La.1926); *Barrett Mfg. Co. v. Board of
> Com'rs for Port of New Orleans,*133 La. 1022, 63
> So. 505 (1913)], subject to exceptions carved
> out in favor of the Port of St. Bernard
> beginning with the creation of what is now
> The Board of Commissioners of the St. Bernard
> Port, Harbor and Terminal District by Act 228
> of 1960 which provisions are contained in
> LSA–R.S. 34:1701–34:1715.

### *20.*

While this appeal was still pending, pursuant to the authority

granted to it under Article 6 § 43 of the Constitution, the legislature

took such action through Act 40 of 1992 and amended the various

statutes affecting the jurisdiction of the Port of New Orleans and

the St. Bernard Port. A copy of the legislative history of Act 40 of

1992 is attached hereto as Exhibit 2.

### *21.*

La. R.S. 34:21(A)(1) was amended to read as follows:

§21. Rights and powers of board in general

[ 7 / 45 ]

E-Filed

2023-09600

**C**

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

A. (1)    The board of commissioners shall regulate the commerce and traffic of the port and harbor of New Orleans in such manner as may, in its judgment, be best for the maintenance and development thereof.

22.

The plain language of La. R.S. 34:21(A)(1) reflects a departure from the tri-parish jurisdiction thought to exist prior to the passage of these amendments.    Act 40 of 1992 reduced the territorial jurisdiction of the Port of New Orleans to extend only to "New Orleans," i.e. the City of New Orleans.    Act 40 of 1992 could have, but did not, reauthorize the jurisdiction to extend to the "Greater New Orleans," which could be interpreted, as a referent, to include the parishes of Orleans, St. Bernard, and Jefferson.

23.

In the context of the instant lawsuit, this might seem to be a major change to the territorial jurisdiction of the Port of New Orleans.   However, prior to the events that form the basis of this lawsuit, Act 40 of 1992 was largely a non-event as the Port of New Orleans had never owned or operated any port facility in the Parish of St. Bernard under its general jurisdiction. As proof thereof, the website for the Port of New Orleans displays a map of all Port of New Orleans facilities: there are no port facilities in St. Bernard

[ 8 / 45 ]

E-Filed

2023-09600

**C**

Section 10

Parish owned or operated through the general jurisdiction of the

Port of New Orleans. See Exhibit 6.[1]

24.

La. R.S. 34:21 was further amended to read as follows:

§21. Rights and powers of board in general

(2)    However, such regulation of such commerce and traffic including international commerce in the parish of St. Bernard shall be governed by the provisions of R.S. 34:1701 et seq.

...

(Emphasis added).

25.

When read together, it was unmistakably clear that the Port of

New Orleans had no general jurisdiction whatsoever in the Parish of

St. Bernard.    All general jurisdiction in St. Bernard Parish was

statutorily given to and imposed upon the Port of St. Bernard.

26.

Act 40 of 1992 also amended La. R.S. 34:1701 to read as follows:

§1701. Creation and territorial limits

The St. Bernard Port, Harbor and Terminal District, created as a public corporation and political subdivision of the state of Louisiana under the authority of Section 31 of Article XIV

---

[1] See https://portnola.com/info. Last visited April 15, 2023.

[ 9 / 45 ]

E-Filed

2023-09600

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

# C

## Section 10

of the Constitution of the state of Louisiana for the year 1921, as amended, shall have territorial limits coextensive with the parish of St. Bernard.   The territorial limits and territorial jurisdiction of said district shall be the territory, including all lands, waterways, rivers, lakes, and navigable bodies, comprising and lying within the limits and boundaries of St. Bernard Parish. *The board of commissioners for the district shall have complete jurisdiction to regulate all domestic, coastwise, and intercoastal commerce and traffic within the district including cargo bound for and/or in and/or coming out of international commerce where such commerce is conducted by or through a facility wholly owned by the district.*

...

(Emphasis added).

27.

Act 40 of 1992 also amended La. R.S. 34:1705 to read as follows:

§1705. Rights of the board of commissioners

A.(1)  *The board of commissioners of the St. Bernard Port, Harbor and Terminal District shall have the sole power to regulate,* pursuant to R.S. 34:1703, the domestic, coastwise, and intercoastal commerce and traffic of said district and all commerce and traffic within the district including cargo bound for an/or in, and/or coming out of international commerce where such commerce and traffic is conducted

[ 10 / 45 ]

E-Filed

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

by or through a facility wholly owned by the district.

...

(Emphasis added).

### 28.

In fully separating the Port of New Orleans and the Port of St. Bernard, the legislature also enacted provisions to prevent the Port of St. Bernard from competing with and undercutting the Port of New Orleans by offering cheaper rates.   Act 40 of 1992 also amended La. R.S. 34:1703 to read in part as follows:

> D. (1) The board shall have the power to reasonably regulate the fees and charges for the structures, works, and facilities administered by the board and all services rendered by it and shall have the duty to collect such fees, rates, or other charges whether established by lease, tariff, or other agreement provided however such fees and charges for the use of such facilities or other services in the course of regulation of international commerce, the board shall not be empowered to impose nor shall it collect any fee, assessment, rate, or other charge whether established by lease, tariff, or other agreement in an amount less than those imposed by the Board of Commissioners of the Port of New Orleans, whether by lease, tariff, or other agreement as they may be amended, revised, or applied by the Board of Commissioners of the Port of New Orleans; or with the consent of the Board of Commissioners of the Port of New Orleans.

[ 11 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

(2) Leases of facilities administered by the board shall require that the lessee publish a tariff containing rates and charges consistent with the board's tariff except with the consent of the Board of Commissioners of the Port of New Orleans.

(3) The board shall not grant any preference, concession, or reduction in any charges for facilities or services in the course of the regulation of international commerce greater than those granted in the same circumstance by the Board of Commissioners of the Port of New Orleans, whether by lease, tariff, or other agreement as they may be amended or revised or applied by the Board of Commissioners of the Port of New Orleans or with, consent of the Board of Commissioners of the Port of New Orleans.

E.  The board shall have the power to reasonably regulate the commerce and traffic of the district, impose rules and regulations, set requirements, performance, safety, environmental, and facility standards and generally provide for the conduct of such activities whether established by lease, tariff, or other agreement provided however that such regulation by the board in the course of the regulation of international commerce, the board shall not be empowered to impose any regulation inconsistent than those imposed in the same circumstance by the Board of Commissioners of the Port of New Orleans whether by lease, tariff, or other agreement as the same may be amended or revised or applied by the Board of Commissioners of the Port of New Orleans.

29.

[ 12 / 45 ]

E-Filed

2023-09600

**C**

Section 10

**FILED**

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

The Port of New Orleans actively sought to prevent the passage of Act 40 of 1992, all to no avail.

30.

Act 40 of 1992, passed by 2/3 of the members of each house, specifically in the house with a vote of 96 "yeas," 3 "nays," and 6 "absent" and in the senate with a vote of 30 "yeas," 5 "nays," and 4 "absent."    A copy of the legislative history of HB 1305 is attached hereto as Exhibit 2.  Act 40 of 1992 makes it unmistakably clear that the *rights and powers* of the Port of Orleans do not extend to the parish of St. Bernard.  In essence, Act 40 of 1992 resolved that the Port of New Orleans was no longer a tri-parish jurisdiction. The rights and powers of the Port of New Orleans were redistributed in accordance with the Constitution.

31.

Act 40 of 1992 resolved that the Port of New Orleans would no longer have any jurisdiction in the Parish of St. Bernard and further establishes that any regulated facilities must be wholly owned by the St. Bernard Port.

32.

Plainly this makes sense as there is no legitimate reason to have two port authorities exercising overlapping jurisdiction in St. Bernard Parish and that an external jurisdiction cannot expand its

[ 13 / 45 ]

E-Filed

2023-09600

**C**

Section 10

own jurisdiction and usurp the jurisdiction of the St. Bernard Port by simply acquiring title to property in the jurisdiction of the St. Bernard Port.

### 33.

Furthermore, the actions of the parties acknowledged the effect of Act 40 of 1992. Since that time, up until the facts giving rise to this lawsuit, the Port of New Orleans did not own or operate any port facilities in the Parish of St. Bernard.

### 34.

At some point prior to December 7, 2004, and in recognition of the jurisdictional independence of the Port of St. Bernard, the Port of New Orleans and the St. Bernard Port devised a plan to executive a non-legislative merger and consolidation of the St. Bernard Port into a *de facto* subsidiary of the Port of New Orleans under the pretext of a cooperative endeavor agreement pursuant to Article 7 § 14 of the Louisiana Constitution.

### 35.

Notably, the Original CEA did not identify a specific public purpose or a specific, identifiable project to which the parties sought to cooperate. Instead, the Original CEA very broadly reflected an agreement to work cooperatively in the future, i.e. to

[ 14 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

"consider joint investments of capital" and to "consider the specific details ... on a case by case basis in the future."

36.

To effectuate that plan, the Port of New Orleans and St. Bernard Port entered into a Cooperative Endeavor Agreement on December 7, 2004 ("the Original CEA"), a copy of which is attached hereto as Exhibit 3.

37.

The recitals to the Original CEA broadly described that the intended purpose was to take a "regional approach to port marketing and operations."   The "regional approach" described therein effectively operated as a merger of the St. Bernard Port into the Port of New Orleans.

38.

On November 17, 2017, the Port of New Orleans and St. Bernard Port executed the First Amendment to the Original CEA ("First Amended CEA"), attached hereto as Exhibit 4.    The First Amendment CEA consisted mainly of recital and a one paragraph agreement to "preserve the (Foreign Trade-Zone magnet site) status" of the two parcels wholly owned and operated by the St. Bernard Port and located entirely within the Parish of St. Bernard.

39.

[ 15 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19
CIVIL
DISTRICT COURT

On December 29, 2022, the Port of New Orleans and St. Bernard Port executed the Second Amendment to the Original CEA ("Second Amended CEA"), attached hereto as Exhibit 5. The Second CEA purported to "create a joint effort" "[b]y collaborating on marketing and working cooperatively in the planning and development of any new container and logistics facilities in St. Bernard Parish."

40.

Part I of the Second Amended CEA broadly sets forth that the Port of New Orleans undertake the satisfaction of judgments related to the expropriation of the Violet Docket Port Property that would thereby allow the Port of New Orleans construct a container terminal at the Violet Dock Port Property "for the economic benefit of the Parish."

41.

Part I of the Second Amended CEA broadly sets forth that the Port of New Orleans would acquire from the St. Bernard Port its other properties surrounding the Violet Docket Port Property.

42.

The Violet Docket Port Property and other properties surrounding the Violet Dock Port Property comprise the Total Property.

[ 16 / 45 ]

E-Filed

2023-09600

C

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

43.

The Second Amended CEA also provided that a portion of the Violet Docket Port Property would be leased back to the St. Bernard Port for the purposes of subleasing that portion to Associated Terminals.

44.

The Second Amended CEA purports to effectuate a non-compete agreement wherein the St. Bernard Port would not develop a container terminal or otherwise compete in international container vessel related activities.  For instance:

1.    Section B(1)(c) states that the Port of New Orleans will pay the St. Bernard Port $1,500,000 to "not develop the Violet Docket Port as a container terminal or otherwise compete in any international container vessel-related activities for a period of (8) years."

2.    Part D(1) provides that the purpose of the Second Amended CEA is to allow the Port of New Orleans to develop an international container yard and that the St. Bernard Port "agrees not to compete in any international container vessel-related activities without the prior written consent of the Board for a period of eight years following the Amendment Effective Date."

[ 17 / 45 ]

E-Filed

2023-09600

**C**

Section 10

**FILED**

2023 AUG 25   P 05:19

CIVIL

DISTRICT COURT

3.    Part G(1) provides that "the terms of V.D.1 (purporting to authorize the Port of New Orleans to operate in St. Bernard Parish) herein shall survive the performance or termination of this CEA for the duration specified therein."

### 45.

The Second Amended CEA further provides that "this CEA does not obligate either party ... to share any of its current or future assets or properties...," meaning that the St. Bernard Port would not share in any of the revenue from the operations of the Port of New Orleans in St. Bernard Parish.

### 46.

The Second Amended CEA further disclaims the cooperation between the parties: "[t]he Parties ... do not intend to create a partnership, principal-agent, or joint venture relationship, and nothing in the Second Amendment and the CEA shall be construed as creating such relationship between the Parties."

## PART III:

## DECLARATORY RELIEF

## RELATING TO JURISDICTION

[ 18 / 45 ]

E-Filed

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

COUNT I:

THE PORT OF NEW ORLEANS

HAS NO JURISDICTION IN ST. BERNARD PARISH

47.

This principal of law is frequently addressed with respect to the territorial jurisdiction of law enforcement officers.    For instance, in   *Hayes v. Parkem Industrial Services, Inc.* , 90-1224 (La.App. 3 Cir. 04/16/1992), the Court explained the logic inherent in the concept of territorial limits:

> If a sheriff's jurisdiction and authority to act is limited to his parish, it stands to reason that he has no jurisdiction or authority to act outside his parish. It follows that if he has no authority to act outside his parish, he has no duty to act outside his parish. As to the plaintiffs in the present case, the sheriff's duty was no greater than that of a lay person.

48.

Act 40 of 1992, enacted in pursuant to the authority granted to the legislature by   Article 6 § 43 of the Constitution, reorganized the jurisdictions of the Port of New Orleans and the Port of St. Bernard in the most customary and straight-forward way possible: the territorial jurisdiction of each entity was limited to the parish reflected in the name of each subdivision.   In other words, the territorial jurisdiction of the Port of New Orleans was limited to

[ 19 / 45 ]

E-Filed

2023-09600

FILED

2023 AUG 25  P 05:19

CIVIL
DISTRICT COURT

**C**

**Section 10**

New Orleans and the territorial jurisdiction of the Port of St.
Bernard was limited to the Parish of St. Bernard.

49.

As such, petitioner respectfully moves this Court to issue a
judgment declaring that the Port of New Orleans has no jurisdiction
in the Parish of St. Bernard.

## COUNT II:

## AS A NECESSARY CONSEQUENCE OF

## THE LIMITATIONS IMPOSED BY ACT 40 OF 1992

## ANY ACTIONS TAKEN BY THE PORT OF NEW ORLEANS

## OUTSIDE OF ITS TERRITORIAL JURISDICTION

## CONSTITUTE AN ABSOLUTE NULLITY UNDER THE LAW

50.

It is a self-evident principal of law that the authority of any
given political subdivision is limited by, among other things such as
the constitution, the territorial jurisdiction of that political
subdivision. In *Lentini v. City of Kenner*, 48,956 (La. 06/04/1968),
252 La. 413, 211 So.2d 311, the Louisiana Supreme Court articulated
this principal as follows:

> Municipalities derive their powers from the
> State. Being creatures of this higher authority,
> they cannot legislate beyond the bounds fixed

[ 20 / 45 ]

E-Filed

2023-09600

C

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

by the State Constitution and general laws. *Randolph v. Village of Turkey Creek* , 240 La. 996, 126 So.2d 341.   We have found no state statute authorizing the Board of Aldermen to revoke the inherent powers of the Marshal. Hence, the contested sections are *ultra vires* acts of the Board of Aldermen and, as such, are null and void.

51.

Similarly, this principal of law has been recognized and applied in the context of a judge that has been recused from a case. In *State ex. rel. Nolan v. Judge Twenty-Second Judicial District Court* , 39 La.Ann. 1994 (La. 11/08/1887), 3 So. 91, the Supreme Court explained:

> A judge who has been recused has no right to take any judicial action in the case in which the recusation has been made.
>
> ...
>
> As the district judge had no authority to act in the case as he did, it follows that the order which he made to dissolve the writs on bond was unwarranted, and so is an absolute nullity

52.

Similarly, this principal of law was recognized by the Louisiana Supreme Court in *Folse v. Police Jury and School Board of Iberville Parish* , 18,543 (La. 05/22/1911), 128 La. 1080, 55 So. 681:

> It would, of course, be impossible to hold that the police jury are not required to conform to

[ 21 / 45 ]

E-Filed

# C
## Section 10

FILED

2023 AUG 25  P 05:19
CIVIL
DISTRICT COURT

the law, since they have no authority to act
in the premises, at all, save to the extent, and
in the manner, that the law authorizes.

53.

Similarly, it has been recognized that an act is void as an *ultra*

*vires* act if that act was done contrary to law.  See *Progressive Waste*

*Solutions, Inc. v. St. Bernard Parish Government* , E.D.La. No. 16-2885,

Doc. 97 (E.D.La. August 9, 2016).

54.

It has been further recognized that a parish's home rule

charter to contain a provision which affects another political

subdivision in a manner inconsistent with the Constitution or

constitutionally passed laws.  In *Montgomery v. St. Tammany Parish*

*Government* , 2017-C-1811 (La. 06/27/2018), 319 So.3d 209, the

Louisiana Supreme Court declared as follows:

> Furthermore, the Constitution does not allow
> a home rule charter to contain any provision
> which affects the office of district attorney
> inconsistent with the Constitution or law. La.
> Const. art. VI, § 5(G).

55.

Along the similar lines, no other body could have delegated

such authority absent legislation authorizing such a delegation.  In

*White Hall Agricultural Company, et al v. Police Jury of Concordia*

[ 22 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

*Parish, et al,* 18,703 (La. 04/24/1911), 128 La. 668, 55 So. 11, the

Louisiana Supreme Court explained as follows:

> There is no law authorizing such a delegation of power. If the police jury has the authority, it must act and not attempt to confer the authority upon another body which has no authority to act in any such capacity.

56.

Here, there is no law delegating, or even attempting to delegate, the jurisdictional powers and duties otherwise reserved unto the St. Bernard Port, only a series of nominal cooperative endeavor agreements with obligations effectuating a jurisdictional transfer.

57.

As such, petitioner respectfully moves this Court to issue a judgment declaring that any of the actions of the Port of New Orleans with respect to activities in St. Bernard Parish are deemed to be null and avoid, *ab initio.* Those actions include, but are not limited to, any permit applications, purchase agreements, or other transfers of any kind.

## COUNT III:

### AS A NECESSARY CONSEQUENCE OF

### THE LIMITATIONS IMPOSED BY ACT 40 OF 1992

[ 23 / 45 ]

E-Filed

2023-09600

C

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

ANY PROPERTY OWNED BY THE PORT OF NEW ORLEANS

OUTSIDE OF ITS TERRITORIAL JURISDICTION AND WITHIN

THE TERRITORIAL JURISDICTION OF THE PORT OF ST. BERNARD

SHOULD BE TRANSFERRED TO THE PORT OF ST. BERNARD

58.

As noted above, La. R.S. 34:21 provides that "[t]he board of commissioners shall regulate the commerce and traffic of the port and harbor of New Orleans in such manner as may, in its judgment, be best for the maintenance and development thereof."

59.

Similarly, La. R.S. 34:23 provides that "[t]he board of commissioners may acquire by purchase, or by expropriation in accordance with the expropriation laws, any property, wharves, or landings necessary for the benefit of the commerce of the port and harbor of New Orleans."

60.

The foregoing statutes in conjunction with the laws governing the territorial jurisdiction of the St. Bernard Port plainly limit the authority of the Port of New Orleans to the those actually in New Orleans.   The existence of the various cooperative endeavor agreements stand as an admission that the Port of New Orleans did not have jurisdiction in St. Bernard Parish.

[ 24 / 45 ]

E-Filed

2023-09600

**C**

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

61.

No other statute provides the Port of New Orleans any authority to purchase outside of its district or to make financial investments in immovable property outside of its district.

62.

It is a recognized principal of law that political subdivisions are not authorized to own immovable property outside of the territorial jurisdiction.

63.

In *West Cameron Port v. Lake Charles Harbor and Terminal District*, 09-509 (La.App. 3 Cir. 05/12/2010), 38 So.3d 577, with similar, but not identical, enabling legislation was considered and it was determine that the port authority had no authority to purchase immovable property outside of its territorial jurisdiction.

64.

As noted in *West Cameron Port*, the intrusion of one political subdivision into another cannot be allowed.

65.

In *Hospital District No. 2 of the Parish of Lafourche v. Hospital Service District No. 1 of the Parish of Terrebonne*, 97-1792 (La.App. 1 Cir. 06/29/1988), 716 So.2d 168, writ denied, 98-2039 (La. 11/13/1998), 730 So.2d 450, the Court similarly concluded that the

[ 25 / 45 ]

E-Filed

**C**

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

hospital service district of one parish could not intrude and operate in that of another parish, absent a statutorily created mechanism for two parishes to agree to form one multi-parish district.   The Court reasoned that to do so would allow the re-writing of the enabling legislation of each district and thereby override the will of the legislature.   The Court further noted that such an intrusion would allow one district to cannibalize or destroy that of another district and therefore that smaller areas or those with less affluence would be deprived of the very services sought to be established by the legislature.

66.

In *City of Baker School Board v. East Baton Rouge Parish School Board* , 99-CA-2505 (La.App. 1 Cir. 02/18/2000), 754 So.2d 291, a case involving the consequences of a reorganization of certain school districts, the Court declared that the title of property for specific governmental functions is to be titled in the name of the entity designated to perform that function in the capacity as trustee for the public and that no compensation is owed for effectuating such a transfer as the transfer is merely from one trustee for the public to another.

67.

In *City of Baker School Board* , the Court concluded:

[ 26 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

The Baker Board, as successor to the Parish Board for the accomplishment of the duty to educate, became the successor of the property through which the duty is to be accomplished. While actual ownership remains with the public at large, title follows the agency obligated to carry out the responsibility. Title to the school property at issue transfers to the Baker Board.

Concerning the issue of compensation, we find none due the Parish Board. There has been no taking. The transfer of legal title from the Parish Board to the Baker Board is merely the transfer from one trustee to another. As stated above, the public owns the school property. Moreover, while the Parish Board is no longer the title owner of the property, it also is no longer mandated to educate the children living within the boundaries of the Baker Board. The release of the obligation follows the transfer of legal title to the property.

68.

Accordingly, petitioner moves this Court to declare that the St.

Bernard Port is the titled owner of all of property bought by the Port

of New Orleans in St. Bernard Parish.

PART III:

DECLARATORY RELIEF

RELATING TO THE VARIOUS

COOPERATIVE ENDEAVOR AGREEMENTS

[ 27 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

V.

COUNT I:

ARTICLE 6 § 43(2) VESTS THE LEGISLATURE THE POWER TO
REORGANIZE THE JURISDICTION OF PORT AUTHORITIES.  AS
SUCH, PORT AUTHORITIES ARE PROHIBITED FROM UTILIZING
A COOPERATIVE ENDEAVOR AGREEMENT
TO EFFECTUATE AN EXTENSION OF THEIR JURISDICTION

69.

Article 7 § 14 provides in relevant part:

> (A) Prohibited Uses. Except as otherwise
> provided by this constitution, the funds,
> credit, property, or things of value of the state
> or of any political subdivision shall not be
> loaned, pledged, or donated to or for any
> person, association, or corporation, public or
> private. Except as otherwise provided in this
> Section, neither the state nor a political
> subdivision shall subscribe to or purchase the
> stock of a corporation or association or for any
> private enterprise.
>
> ...
>
> (C) Cooperative Endeavors. For a public
> purpose, the state and its political
> subdivisions or political corporations may
> engage in cooperative endeavors with each
> other, with the United States or its agencies, or
> with any public or private association,
> corporation, or individual.

| 28 / 45 |

E-Filed

**FILED**

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

70.

Article 6 § 20 similarly provides:

> Except as otherwise provided by law, a
> political subdivision may exercise and perform
> any authorized power and function, including
> financing, jointly or in cooperation with one or
> more political subdivisions, either within or
> without the state, or with the United States or
> its agencies.

71.

La R.S. 33:1324 provides in relevant part:

> Any    parish,    municipality    or    political
> subdivision of the state, or any combination
> thereof, may make agreements between or
> among themselves to engage jointly in the
> construction, acquisition or improvement of
> any public project or improvement, the
> promotion    and    maintenance    of    any
> undertaking or the exercise of any power,
> provided that at least one of the participants to
> the agreement is authorized under a provision
> of general or special law to perform such
> activity or exercise such power as may be
> necessary for completion of the undertaking.
> Such arrangements may provide for the joint
> use of funds, facilities, personnel or property
> or any combination thereof necessary to
> accomplish the purposes of the agreement...

72.

Although styled as cooperative endeavor agreements, the

Original CEA, along with the First Amended CEA, and Second

Amended CEA, plainly do not operate to effectuate any joint

construction or operation of the "Louisiana International

[ 29 / 45 ]

E-Filed

2023-09600

**C**

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

Terminal" as contemplated by the Port of New Orleans. The Second Amended CEA makes it clear that the St. Bernard Port's role is to _not_ perform its duties regarding the "Louisiana International Terminal" and instead allow the Port of New Orleans to do so, and furthermore that the St. Bernard Port is _not_ to be involved in the construction or operation of the "Louisiana International Terminal," and is otherwise not to receive any direct benefit from the proposed terminal.

73.

Instead, the Original CEA, along with the First Amended CEA, and Second Amended CEA purport to effectuate broad changes to the structure, organization, distribution, and redistribution of the powers, functions, and territorial jurisdiction of the Port of St. Bernard and Port of New Orleans, which is beyond the subject matter of Article 7 § 14, Article 6 § 20, and La. R.S. 33:1324.

74.

Article 6 § 43(2) explicitly provides that "[o]nly by law enacted by the favorable vote of two-thirds of the elected members of each house, may the legislature consolidate or abolish any such commission or district or diminish, reduce, or withdraw from any such commission or district any of its powers and functions and affect the structure and organization, distribution, and

[ 30 / 45 ]

E-Filed

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

redistribution of the powers and functions of any such commission or district, including additions to or reductions of its territorial jurisdiction."

75.

Article 6 § 43(2) explicitly reserves this authority sought to be exercised by the Port of St. Bernard and the Port of New Orleans exclusively to the legislature and furthermore places an enhanced legislative vote threshold for any such changes.  As such, Article 6 § 43(2) explicitly precludes the use of a cooperative endeavor agreement to effectuate such changes.

76.

The Original CEA, First Amended CEA, and Second Amended CEA are, in truth and fact, an attempt by the Port of New Orleans to extend its jurisdictional territory into St. Bernard Parish by effectively purchasing the acquiescence of potentially aggrieved party, the St. Bernard Port, under the guise of a cooperative endeavor agreement.

77.

Accordingly, the Original CEA, First Amended CEA, and Second Amended CEA all unconstitutionally conflict with the plain language of Article 6 § 43(2) and are therefore deemed to be absolute nullities under Louisiana law, and alternatively that the

[ 31 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

Original CEA, First Amended CEA, and Second Amended CEA are absolute violations of Article 7 § 20 insofar as the St. Bernard Port sought to donate its jurisdictional powers and duties.

## COUNT II:

## THE VARIOUS COOPERATIVE ENDEAVOR AGREEMENTS

### DID NOT HAVE A LAWFUL CAUSE

*78.*

Civil Code Article 1967 provides in part:

> Art. 1967.    Cause defined; detrimental reliance
>
> Cause is the reason why a party obligations himself.

*79.*

Civil Code Article 1966 provides:

> Art. 1966.  No obligation without cause
>
> An obligation cannot exist without a lawful cause.

*80.*

Civil Code Article 1968 provides in part:

> Art. 1968.  Unlawful cause
>
> The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy.

*81.*

[ 32 / 45 ]

E-Filed

2023-09600

C

Section 10

As noted above, Article 6 § 43(2) specifically and explicitly reserves the right to organize the jurisdictions of port authorities unto the legislature.   The organization of jurisdictions is not merely a delegation of power, but also an imposition of the duty to perform certain functions.   The Original CEA, First Amended CEA, and Second Amended CEA operate together to usurp the power of the legislature in the organization of the jurisdictions.   As such, the cause of the various cooperative endeavor agreements is unlawful.

82.

Accordingly, petitioner moves this Court to declare that the Original CEA, the First Amended CEA, and Second Amended CEA are invalid and void as having an unlawful cause.

## COUNT III:

## THE SECOND AMENDED COOPERATIVE ENDEAVOR AGREEMENT

## DID NOT HAVE A LAWFUL CAUSE

83.

La R.S. 34:1701 provides in part:

> The board of commissioners for the district shall have complete jurisdiction to regulate all domestic,     coastwise,     and     intercoastal commerce and traffic of said district, and all commerce  and  traffic  within  the  district including cargo bound for and/or in and/or coming out of international commerce where

[ 33 / 45 ]

E-Filed

2023-09600

**C**

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

such commerce is conducted by or through a facility wholly owned by the district.

### 84.

La R.S. 34:1703 provides in part:

> The said board shall have the power to regulate the commerce and traffic of said district in such manner as may in its judgment be best for the public interest.

### 85.

The vesting of such power and jurisdiction with the St. Bernard Port operated as an imposition of a duty upon the St. Bernard Port to exercise that power and jurisdiction, subject to broad discretion in the implementation of those duties.

### 86.

Petitioner avers that the non-competition agreements set forth in the Second Amended CEA constitute a willful and intentional failure to exercise the power and jurisdiction for which the legislature created the St. Bernard Port and for which the St. Bernard Port collects *ad valorem* taxes to exercise such jurisdiction.

### 87.

As such, the performance of such a provision would constitute an intentional absconding or unlawful delegation of the power vested in the St. Bernard Port, and therefore violate Louisiana law.

[ 34 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

### 88.

Inasmuch as the offending provision of the Second Amended CEA constitutes the integral cause of the agreement, the entire Second Amended CEA should be declared invalid and void.

### 89.

Accordingly, petitioner moves this Court to declare that the Second Amended CEA are invalid and void as having an unlawful cause.

## PART III:

## DECLARATORY RELIEF

## RELATING TO THE PURCHASE OF THE ASSIGNMENT OF

## JUDGMENT FROM

## VIOLET DOCK PORT, L.L.C.

## V.

## COUNT I:

## LA RS 33:2955 IS THE EXCLUSIVE STATUTE GOVERNING THE

## INVESTMENTS POLITICAL SUBDIVISIONS ARE AUTHORIZED TO

## MAKE WITH PUBLIC FUNDS.  THE ASSIGNMENT OF A JUDGMENT

## IS NOT AN AUTHORIZED INVESTMENT VEHICLE.  AS SUCH, THE

[ 35 / 45 ]

E-Filed

2023-09600

# C

## Section 10

**COURT SHOULD DECLARE THE PURCHASE OF THE ASSIGNMENT**

**TO BE AN ABSOLUTE NULLITY.**

90.

La R.S. 33:2955 provides in relevant part:

§2955. Investments by political subdivisions

A.(1) All municipalities, parishes, school boards, and any other political subdivisions of the state are hereby authorized and directed to invest such monies in any general fund or special fund of the political subdivision, and any other funds under the control of the political subdivision which they, in their discretion, may determine to be available for investment in any of the following obligations:

(a) Direct United States Treasury obligations, the principal and interest of which are fully guaranteed by the government of the United States.

(b)(i) Bonds, debentures, notes, or other evidence of indebtedness issued or guaranteed by federal agencies and provided such obligations are backed by the full faith and credit of the United States of America, which obligations include but are not limited to:

(aa) U.S. Export-Import Bank.

(bb) Farmers Home Administration.

(cc) Federal Financing Bank.

[ 36 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

(dd) Federal Housing Administration Debentures.

(ee) General Services Administration.

(ff) Government National Mortgage Association – guaranteed mortgage-backed bonds and guaranteed pass-through obligations.

(gg) U.S. Maritime Administration – guaranteed Title XI financing.

(hh) U.S. Department of Housing and Urban Development.

(ii) Bonds, debentures, notes, or other evidence of indebtedness issued or guaranteed by U.S. government instrumentalities, which are federally sponsored, and such obligations include but are not limited to:

(aa) Federal Home Loan Bank System.

(bb) Federal Home Loan Mortgage Corporation.

(cc) Federal National Mortgage Association.

(dd) Student Loan Marketing Association.

(ee) Resolution Funding Corporation.

91.

[ 37 / 45 ]

E-Filed

2023-09600

**C**

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

The Port of New Orleans is a political subdivision of the State. See *Board of Commissioners of the Port of New Orleans v. City of New Orleans*, 2013–0881 (La.App. 4 Cir. 02/26/2014), 135 So.3d 821.  As such, the Port of New Orleans is subject to the limitation set forth in La. R.S. 33:2955, et seq.

92.

La R.S. 33:2955, et seq., is the exclusive statute governing what investments local political subdivisions in Louisiana are allowed to make.   See Investments by Local Political Subdivisions and Municipalities, Frequently Asked Questions, published by the Louisiana Legislative Auditor on October 28, 2022.

93.

The purchase of the assignment of the money judgment in favor of the Violet Dock Port against the St. Bernard Port constitutes an "investment" as a matter of fact and as a matter of law.   Specifically, the investment, as articulated by the Second Amended CEA, reflects that the Port of New Orleans purchased the assignment with the intention of acquiring land that was not otherwise subject to expropriation and land that could not be designated by the St. Bernard Port as surplus property.

94.

[ 38 / 45 ]

E-Filed

**C**

**Section 10**

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

As such, the purchase of the assignment of the money judgment in favor of the Violet Dock Port against the St. Bernard Port constitutes an "investment" under Louisiana law.

### 95.

Accordingly, petitioner moves this Court to declare that the purchase of the assignment from Violet Dock Port to be an absolute nullity.

### 96.

Furthermore, inasmuch as the purchase of the assignment from the Violet Dock Port formed an integral part of the Second Amended CEA, petitioner moves this Court to declare that the Second Amended CEA are invalid and void as having an unlawful cause.

## PART IV:

## COUNT I:

## INJUNCTIVE RELIEF

### 97.

Petitioner avers that unless the Court issues a  Permanent Injunction, in the form described herein, Petitioner's own jurisdiction will be in jeopardy as the actions taken by the Port of

[ 39 / 45 ]

E-Filed

2023-09600

C

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

New Orleans usurp the power reserved unto the Port of St. Bernard and the St. Bernard Parish Government.

### 98.

Moreover, the injunctive relief sought herein puts the defendant on notice to minimize its own damages arising out of the unlawful actions taken and to be taken by the Port of New Orleans and moreover acts to minimize the damages that might accrue to the Port of New Orleans by undertaking actions invalid under the law.

### 99.

Accordingly, after all due proceedings are had, petitioner requests that in due course this Court permanent prohibitory injunction:

(1) taking any actions moving forward with the development of a port and/or container terminal in the Parish of St. Bernard.

## VI.

## COUNT II:

## DECLARATORY RELIEF

### 100.

[ 40 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

"Courts of record within their respective jurisdiction may declare rights, status, and other legal relations whether or not relief is or could be claimed." La. C.C.P. Art. 1871.

*101.*

"A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." La. C.C.P. Art. 1872.

*102.*

Petitioner avers that it is an interested party within the meaning of the Code of Civil Procedure and is therefore entitled to have this Court declare the rights and duties as more fully described herein. Petitioner is affected by defendant's actions as defendant seeks to develop a container and logistics center facility (the "Project") in St. Bernard Parish, purports to put into commerce property for the alleged benefit St. Bernard Parish, and that defendant acknowledges that St. Bernard Parish is a stakeholder in the Project which will necessitate increased St. Bernard Parish governmental services.

[ 41 / 45 ]

E-Filed

2023-09600

**C**

**Section 10**

**FILED**

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

103.

Accordingly, after all due proceedings are had, petitioner requests that this Court immediately issue a judgment declaring:

(1) that the Port of New Orleans does not have any jurisdiction to operate within the Parish of St. Bernard;

(2) that any permits, applications, and/or contracts related to any port operations done or to be done within the Parish of St. Bernard are hereby declared to be *ultra vires* acts and therefore null and void; and

(3) that the Original CEA, First Amended CEA, and Second Amended CEA are invalid as a matter of law;

## VIII.

## CUMULATION OF ACTIONS

104.

Plaintiff avers that it is entitled to cumulate its action for declaratory relief and its action for a permanent injunction under Louisiana Code of Civil Procedure Article 463 as there is a community of interest between the parties joined, each of the actions cumulated are brought in the proper venue, and all of the actions are mutually consistent and employ the same form of proceeding, namely the ordinary proceeding.  The Supreme Court

[ 42 / 45 ]

E-Filed

2023-09600

C

Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

has recognized that cumulation of such actions is appropriate. *Chauvet v. City of Westwego*, 599 So.2d 294 (La. 1992).

## X.

### PRAYER FOR RELIEF

*105.*

WHEREFORE petitioner the ST. BERNARD PARISH GOVERNMENT respectfully requests and prays for the following relief:

(1)  That in due course this Court issue a permanent injunction, restraining, enjoining, and prohibiting defendants from taking any actions moving forward with the development of a port in the Parish of St. Bernard;

(2)  That this Court issue a judgment declaring that that the Port of New Orleans does not have any jurisdiction to operate within the Parish of St. Bernard;

(3)  That this Court issue a judgment declaring that any permits, applications, and/or contracts related to any port operations done or to be done within the Parish of St. Bernard are hereby declared to be *ultra vires* acts and therefore null and void;

(4)  That this Court issue a judgment declaring that the

[ 43 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

Original CEA, First Amended CEA, and Second Amended

CEA are invalid as a matter of law; and

(5) For all such other general, legal, and equitable relief as

this Court may deem appropriate.

OFFICE OF THE DISTRICT ATTORNEY
FOR THE THIRTY-FOURTH JUDICIAL DISTRICT

HONORABLE PERRY M. NICOSIA

BY: _____
DAVID C. JARRELL (Bar No. 30907)
1101 W. St. Bernard Hwy.
Chalmette, LA 70043
Tel:  (504) 271-1658
Fax: (504) 279-2874
djarrell@stbda.org
Attorney for SBPG

[ 44 / 45 ]

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

THIRTY-FOURTH JUDICIAL DISTRICT
FOR THE PARISH OF ST. BERNARD

STATE OF LOUISIANA

NUMBER:                                          DIVISION:

2 3 - 10 0 6  ST. BERNARD PARISH GOVERNMENT

VERSUS

BOARD OF COMMISSIONERS FOR THE PORT OF NEW ORLEANS

FILED: _____    CLERK: _____

### SERVICE INSTRUCTIONS

PLEASE SERVE:

BOARD OF COMMISSIONERS FOR THE PORT OF NEW ORLEANS
Through its statutory agent:
Brandy Christian, President and Chief Executive Office
1350 Port of New Orleans Place
New Orleans, LA  70130

[ 45 / 45 ]

E-Filed

2023-09600

# C

## Section 10

**FILED**

2023 AUG 25  P 05:19

CIVIL
DISTRICT COURT

David C. Jarrell
9101 W. St. Bernard Hwy.
Chalmette, LA 70043
dcj@jarrell-lawfirm.com

August 11, 2023

Via e-mail: alora.madere@portnola.com
Board of Commissioners for the Port of New Orleans
1350 Port of New Orleans Place
New Orleans, LA 70130

Dear records custodian,

Please produce the following documents:

(1) All leases and proposed leases, including any drafts thereof, with the Arlene and Joseph Meraux Charitable Foundation, whether directly or indirectly through one of its subsidiaries and/or affiliated companies.

(2) All leases and proposed leases, including any drafts thereof, related to the Sinclair Tract in St. Bernard Parish.

(3) All leases and proposed leases, including any drafts thereof, with the St. Bernard Port, Harbor, and Terminal District.

Please respond within the time period allowed by law.

Sincerely,

DAVID C. JARRELL

E-Filed

**EXHIBIT B**

2023-09600

# C

## Section 10

**FILED**

2023 AUG 25  P 05:19

CIVIL
David C Jarrell
DISTRICT COURT
9101 W. St. Bernard Hwy.
Chalmette, LA 70043
dcj@jarrell-lawfirm.com

August 11, 2023

Via e-mail: alora.madere@portnola.com
Board of Commissioners for the Port of New Orleans
1350 Port of New Orleans Place
New Orleans, LA 70130

Dear records custodian,

Please produce the following documents:

(1)    All documents evidencing or otherwise discussing the existence of any jurisdiction of the Port of New Orleans in St. Bernard Parish since January 1, 1992.

(2)    All memoranda, including legal memoranda and opinions, discussing the scope or nature of any jurisdiction of the Port of New Orleans in St. Bernard Parish since January 1, 1992.

(3)    All documents reflecting any income derived from any activities occurring within St. Bernard Parish for the last 5 years.

(4)    All documents evidencing your contention that the Port of New Orleans has jurisdiction in St. Bernard Parish.

Please respond within the time period allowed by law.

Sincerely,


DAVID C. JARRELL

E-Filed

**EXHIBIT C**

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL
David C Jarrell
DISTRICT COURT
9101 W. St. Bernard Hwy.
Chalmette, LA 70043
dcj@jarrell-lawfirm.com

August 11, 2023

Via e-mail: alora.madere@portnola.com
Board of Commissioners for the Port of New Orleans
1350 Port of New Orleans Place
New Orleans, LA 70130

Dear records custodian,

Please produce the following documents:

(1)    All    contracts,    proposed    contracts,    requests    for
bids/proposals, invitation for bids/proposals, solicitation for
bids/proposals, including any drafts thereof, related to the
proposed Louisiana International Terminal.

(2)    All documents identifying all private investors and/or
potential private investors in the Louisiana International Terminal.

(3)    All plans, layouts, and other similar documents of the
Louisiana International Terminal.

(4)    All applications or permits of any kind related to the
Louisiana International Terminal, including any correspondence
related to said applications and/or permits.

(5)    All letters/memoranda of understanding, agreements, and/or
cooperative endeavor agreements with any of the following: (1) the
owners of any real estate sought to become part of the Louisiana
International Terminal; (2) the private investors in the Louisiana
International Terminal; and (3) any persons, firms, or entities,

E-Filed

**EXHIBIT D**

2023-09600

FILED

2023 AUG 25  P 05:19

CIVIL
DISTRICT COURT

# C

**Section 10** whether public or private, who have a substantial economic interest in the Louisiana International Terminal.

Please respond within the time period allowed by law.

Sincerely,

DAVID C. JARRELL

E-Filed

2023-09600

# C

## Section 10

FILED

2023 AUG 25  P 05:19

CIVIL
David C. Jarrell
DISTRICT COURT
9101 W. St. Bernard Hwy.
Chalmette, LA 70043
dcj@jarrell-lawfirm.com

August 11, 2023

Via e-mail: alora.madere@portnola.com
Board of Commissioners for the Port of New Orleans
1350 Port of New Orleans Place
New Orleans, LA 70130

Dear records custodian,

Please produce the following documents:

(1)     All documents of any kind or type, including drafts thereof, related to any proposed facility of the Port of New Orleans on any property owned, operated, or managed by Arlene and Joseph Meraux Charitable Foundation, whether directly or indirectly, excluding any documents previously produced in response to a prior public records request from the undersigned.

(2)     All documents reflecting any expenses of any type or kind, including legal fees, related to any proposed or considered facility on any property owned, operated, or managed by Meraux Foundation, whether directly or indirectly.

(3)     All correspondence with Sidney D. Torres, III, his law firm, or his designee, related to the Sinclair Tract.

(4)     All documents reflecting any appointments, changes, resignations, and/or removals from the Board of Commissioners for the Port of New Orleans

Please respond within the time period allowed by law.

E-Filed

**EXHIBIT E**

2023-09600

# C

## Section 10

Sincerely,

FILED

2023 AUG 25  P 05:19

CIVIL

DISTRICT COURT

DAVID C. JARRELL

E-Filed