UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE ST. BERNARD PARISH SCHOOL BOARD** *Petitioner* | **CIVIL ACTION NO. 24-01952** |
| **VERSUS** | **SECTION L** |
| **THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS** *Respondent* | **MAGISTRATE 5** |

*REPLY MEMORANDUM IN SUPPORT OF
MOTION TO REMAND*

NOW INTO COURT, through undersigned counsel, comes petitioner who respectfully submits the following Reply Memorandum in Support of petitioner's Motion to Remand:

The fundamental question of whether the Clean Water Act preempts state nuisance law has already been answered by the United States Supreme Court in *International Paper Co. v. Ouellete*, 479 U.S. 481, 107 S.Ct. 805, at 815-81, 93 L.Ed.2d 833: the Clean Water Act ***does not*** preempt state nuisance law claims. That *Ouelette* stands for this proposition was recognized in *Ford v. Murphy Oil USA, Inc.,* 750 F.Supp 766 (E.D.La. 1990) and *Riehm, et al v. Wood Resources, LLC, et al*, 16-12747, Section J(3) (E.D. La.

[ 1 / 11 ]

10/20/2016). The defendant has refused to acknowledge, much less distinguish, *Ouelette*, *Ford*, or *Riehm*.

A plain reading of the Petition confirms that the cause of action is based upon state nuisance law. The Petition itself explicitly relies upon Civil Code Articles 667-669 and relies upon the state law cases of *Inabet*, *Borgnemouth Realty*, *Badke*, *Critney*, *Rodrigue*, *McGee*, *Yokum*, *Robichaux*, *Beauvais*, and *Marks* as examples of other similar actionable nuisance claims. It is worth noting that the Petition does not rely upon a single federal law or federal standard of care to support its nuisance claim. In fact, the Petition itself cites to *Ellis v. Evonick*, E.D.La. No. 21-1089 (May 27, 2022), 2022 WL 1719196 for the proposition that: "unlike their article 2315 general negligence claims, plaintiffs' nuisance claims do not require an allegation of a separate source of duty. The proprietor's duty to his neighbors is established by the Code itself, and it stems from the nature of the parties' relationships as neighbors." As such, *Ouelette* is directly applicable to the case at hand. Further, the permit at issue does not seek to contradict *Ouelette* - quite the opposite: the permit explicitly acknowledges:

> This permit does not authorize any injury to the property or rights of others.

See Doc. 1-3, Page 2, Section 2(b).

In an attempt to circumvent *Ouelette*, the defendant seeks to re-imagine the Petition in a way that superficially allows for the application of the *Tennesse Gas* case. According to the defendant, the petition at hand is not really seeking injunctive relief to

enjoin the anticipated nuisance of a port facility, but rather is seeking injunctive relief to halt a federal permitting process. This is not hyperbole. The defendant explicitly contends that "the School Board is attempting to shut down the federal permitting process at the outset..." See Doc. 14, page 21. See also, Doc. 14, page 2: "The School Board [is] ... attempting, *inter alia*, to completely halt a federal permitting process..." and Doc. 14, page 5: "the School Board seeks to preemptively halt federally permitted activities and the federally-required permit process."

There is no reasonable reading of the petition that would allow such a conclusion to be drawn. The petition does not state or imply that the relief sought will prohibit the advancement of any permit application or regulatory process. Louisiana law explicitly recognizes a cause of action for an anticipatory nuisance. See *Stop the Destruction of St. Bernard, Inc. v. Board of Commissioners for the Port of New Orleans*, 2023-CA-0323, p. 11 (La. 10/26/2023), 376 So.3d 982, 988 and *Salter v. B.W.S. Corp., Inc.*, 290 So.2d 821 (La. 02/18/1974). Such an injunction enjoins the anticipated nuisance itself, not any permitting process revolving around same and not by or through the halting of any permitting process.

The defendant seeks to capitalize on certain language seeking to enjoin "construction or construction related activities." The defendant seeks to contort the usage of this phrase to include *pre-construction* activities such as the design phase and any applicable permitting processes that must be undergone prior to any construction. This position also feigns ignorance of the facts underlying the instant lawsuit and alleged

therein. The work that prompted this lawsuit, which just so happens to be the only work that has been permitted, is set forth in the permit attached to the Notice of Removal:

> Clear for access and spoil/vegetation stockpile areas for geotechnical field exploration activities to include a total of twenty-seven (27) soil borings, sixty (60) Cone Penetration Tests, and approximately twelve-thousand (12,000) linear feet of Electrical Resistivity Testing.

See Doc. 1-3, p 33.

The petition does not reference or allude to any permit. The petitioner was completely unaware of any permit, much less the testing permit, prior to the filing of the defendant's notice of removal. It is only now that we understand that the work that prompted the filing of this lawsuit is the work described in the testing permit and is a precursor to the construction and operation of the facility at issue.

The permitted work is not construction in the strictest sense as it is not the building or erection of a structure. At the same time, the permitted work is not pre-construction activity as evidenced by the requirement of and existence of a permit for the work. But the work at issue is certainly construction related as the preliminary work necessary for the actual construction of the facility. It is the construction and operation of the facility that is in issue of this case.

The defendant further contends that "[t]his is a case of complete and total preemption, as the federal regulatory permitting scheme completely preempts any other law." See Doc. 14, page 21. This is patently false. The defendant knows, but avoids addressing, that it is subject to multiple state and federal permitting frameworks as

evidenced by the fact that it has already voluntarily submitted a Water Quality Certification permit application[1] and a Coastal Use Activity permit application, both with the State of Louisiana. These documents were recently obtained from a Freedom of Information Act request.[2] These additional permit applications reflect an acknowledgment by the defendant that the Clean Water Act does not result in the "complete and total preemption ... of any other law." The permit itself also acknowledges that there is no complete and total preemption:

> This permit does not obviate the need to obtain other Federal, State, or local authorizations required by law.
>
> See Doc. 1-3, Page 2, Section 2(b).

Moreover, it cannot be reasonably disputed the issuance of a permit from the U.S. Army Corps of Engineers will not dispense with adherence to the local zoning requirements, the requirements of the Americans with Disabilities Act, or the requirements of the Louisiana State Uniform Construction Code, to name just a few, nor will such a permit dispense with the defendant's own construction requirements that will govern this facility.[3] All of the foregoing demonstrate that the Clean Water Act is but one

---

[1] See https://www.deq.louisiana.gov/page/quality-certifications. A review of the foregoing website attests to the requirements of the Clean Water Act to obtain additional state permitting and/or waivers.

[2] Interestingly, Page 5 (Step 12) of Exhibit 1 of the Coastal Use Activity permit application reflects that the defendant is the sole owner of the property that is the subject of this application. This is obviously not accurate since Page 8 of Exhibit 2 reflects that the facility is built on top of the School site that is the subject of this lawsuit. The filing of this lawsuit attests to the fact that (contrary to its CUP permit), the defendant does not own the entirety of the property of which it seeks to develop.

[3] https://portnola.com/business/permitting

regulatory framework among a constellation of regulatory frameworks that will govern this development.

It is for these reasons that the defendant's attempt to force fit the case at hand under the *Tennessee Gas* framework is misplaced. As previously noted, the Petition does not rely upon any federal law to establish a standard of care upon which petitioner's nuisance claim is based.[4] Even under *Tennessee Gas*, this is a critical distinction. As the Court in *Tenneessee Gas* explained:

> The absence of any state law grounding for the duty that the Board would need to establish for the Defendants to be liable means that that duty would have to be drawn from federal law. Supreme Court precedent is clear that a case arises under federal law where "the vindication of a right under state law necessarily turn[s] on some construction of federal law," and the Board's negligence and nuisance claims thus cannot be resolved without a determination whether multiple federal statutes create a duty of care that does not otherwise exist under state law.

A "duty of care that does not otherwise exist under state law" is the critical threshold and that threshold has not been crossed in the underlying case. The Court in *Riehm, et al v. Wood Resources, LLC, et al*, 16-12747, as recognized and followed by the

---

[4] While the hyper concentration of diesel emissions are noted as one of many deleterious effects upon students, the petition does not allege or imply that the concentrated diesel emissions are a violation of any federal law. Quite the opposite, the Petition, in Paragraph 127 alleges "[t]here can be no doubt that the inconvenience and interference likely to be caused by the construction and operation of the Louisiana International Terminal will far exceed that of any of the cases noted above." The cases alluded to, all of which were based on Louisiana law, were *Inabet* (excessive emissions of smoke, odors, noise, and dust vapors), *Borgnemouth Realty* (nauseous and offensive odors), *Badke* (excessive noise), *Critney* (settlement of toxic dust), *Rodrigue* (obnoxious lights and displays), *McGee* (excessive smoke, gas, and steam), *Yokum* (excessive noise), *Robichaux* (harboring vermin and causing a stench), *Beauvais*, (excessive noise), and *Marks* (excessive noise).

Court *Bihm v. Teche Vermillion Fresh Water District*, 22-01458 (W.D. La. 08/09/22), 2022 WL 18674850, noted the importance of this distinguishing fact:

> In this case, Plaintiffs' state court petition does not argue that federal regulations and statutes establish the duties owed by Defendants. Rather, Plaintiffs' petition alleges that Defendants breached duties imposed under Louisiana law. Because the plaintiff in *Board of Commissioners* [a.k.a. *Tennessee Gas*] argued that the federal standards established the duties owed by defendants, and the defendants did not have an independent duty under Louisiana law, the Court determined that the federal statutes were not just one of multiple theories that could support the plaintiff's negligence and nuisance claim. Here, Plaintiffs' state court petition explicitly references the Louisiana statutes, civil code articles, and local ordinances that Plaintiffs allege Defendants have violated. Plaintiffs' petition merely references federal statutes in further support of their argument that Defendants have been negligent, a nuisance, and violated local ordinances. Further, Defendants have not argued that they have no independent duty under Louisiana law. In fact, Defendants may owe a duty to Plaintiffs under Louisiana Civil Code Articles 667-679, Louisiana Civil Code Article 2315, and local ordinances, whereas the Court in *Board of Commissioners* [a.k.a. *Tennessee Gas*] conclusively determined that the defendants did not have an independent duty under Louisiana law. Thus, unlike *Board of Commissioners* [a.k.a. *Tennessee Gas*], Plaintiffs' state law claims do not necessarily raise a federal issue.

The Petition clearly does not rely upon any federal law to ground its nuisance claim. In fact, the Petition explicitly disclaims as much in citing to *Evonick* for the proposition that Articles 667-669 are an independent source of duty under Louisiana law. In essence, the defendant seeks to raise the issuance of the testing permit and the existence of some other future permitting application as a ***defense*** to the nuisance claim asserted herein.

But in order to make *Tennessee Gas* applicable, the defendant would have this Court believe that it is an element of petitioner's cause of action to prove a violation of the permit to be actionable. Quite explicitly, the defendant contends that "[i]n order to find that the Port's permitted conduct is a nuisance ... the Court must either find the USACE permit is invalid ... or that the Port is not in compliance with that permit." See Doc. 14, page 11. The defendant further contends that "[t]hus, the 'testing permit' establishes the standard of care, and any court considering the School Board's claim must necessarily construe the testing permit (or invalidate it) to find that the Port has breached the standard of care to support a damages claim under Article 667." Doc. 14, page 13.

This is simply not true either factually or legally. Factually, the permit does not establish a standard of care and thus becomes irrelevant to the nuisance sought to be enjoined. The permit itself further disclaims such a position when it explicitly states:

> This permit does not authorize any injury to the property or rights of others.

> See Doc. 1-3, Page 2, Section 2(b).

The permit also states:

> Limits of Federal Liability. In issuing this permit, the Federal Government does not assume any liability for the following:
>
> ...
>
> c. Damages to persons, property, or to other permitted or unpermitted activities or structures caused by the activity authorized by this permit.
>
> d. Design or construction deficiencies associated with the

permitted work.

See Doc. 1-3, Page 2, Section 3.

Nothing in the permit or the regulatory framework serves to attest to the sufficiency or prudence of the design of the Louisiana International Terminal vis-a-vis the School Board. The permit explicitly states that the permittee-defendant retains sole legal responsibility for these consequences.

Legally, while compliance with a federal permits may be a defense to a state cause of action, it is not an absolute defense as the defendant suggests. The Court in *Riehm*, when faced with the same type of argument, rejected a similar preemption argument:

> In fact, it was Defendants who raised the issue of federal standards, which appears more like the defense of preemption. However, "[a] defense that raises a federal question is insufficient" to provide jurisdiction. See *MSOF Corp v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002) (citing *Merrell Dow Pharmas., Inc. v. Thompson*, 478 U.S. 804 (1986)). Plaintiffs are the masters of their complaint, and may choose to allege only state-law claims even where federal remedies exist. Id. (citing *Elam v. Kansas City S. Ry. Co.,* 635 F.3d 796, 803 (5th Cir. 2011)). Further, simply because Defendants may have been in compliance with their federal permits does not necessarily mean that they were in compliance with state laws and local ordinances. See *Cerny v. Marathon Oil Corp.*, No. 13-563, 2013 WL 5560483, at *8 (W.D. Tex. Oct. 7, 2013) (citing *Bell v. Cheswick Generating Station*, 734 F.3d 188 (3d Cir. 2013) (noting that the Clean Air Act permits states to impose stricter standards)); see also *Gilbert v. Synagro Cent., LLC*, No. 8-1460, 2008 WL 4542248, at *2-4 (E.D. Pa. Oct. 9, 2008) (noting that a potential federal defense is not a necessary element of a common-law tort claim, and merely suggesting that a defense may be raised that defendants were in compliance with federal regulations does not give rise to federal question

> jurisdiction); *Wyatt v. Susses Surry, LLC*, 482 F. Supp. 2d 740, 745 (E.D. Va. 2007) ("Even if Defendants were able to prove compliance with all state a federal regulations, Plaintiffs could still set forth valid claims upon which relief could be granted because the federal Clean Water Act contains a 'savings clause,' which has been construed by the Supreme Court to permit rather than preclude state common-law claims." (citing *Int'l Paper Co. v. Ouelette*, 749 U.S. 481 (1987)).

The defendant seeks to focus the Court's attention on this testing permit as if it were integral to the disposition of the underlying case. It is not. The underlying case seeks an anticipatory nuisance injunction as recognized by the Louisiana Supreme Court in *Salter*. The petition seeks to enjoin the construction and operation of the Louisiana International Terminal literally on top of and surrounding the School site because the facility will inevitably create an impermissible nuisance. The actual commencement of construction is relevant to demonstrate compliance with the ripeness requirements set forth in *Stop the Destruction of St. Bernard*. It is not a material issue in this case as to whether the U.S.A.C.E. should have issued the testing permit or whether the defendant breached any standard of care set forth in the testing permit. If the defendant wants to assert that as a defense on the merits, it certainly has the right to do so but that does not transform a non-federal question into a federal question. The essence of the underlying case is whether the Louisiana International Terminal, if constructed, would constitute an impermissible nuisance under Louisiana state law. The holding of *Ouelette* is controlling on this issue and there is no federal question that would give rise to federal question jurisdiction.

It is for all of the reasons noted above that this case does not give rise to federal question jurisdiction. Accordingly, petitioner respectfully moves this Court to remand this case to state court.

**OFFICE OF THE DISTRICT ATTORNEY**
**FOR THE PARISH OF ST. BERNARD**

**HONORABLE PERRY M. NICOSIA**

BY:   /s/ David C. Jarrell
       DAVID C. JARRELL (Bar No. 30907)
       1101 W. St. Bernard Hwy.
       Chalmette, LA 70043
       Tel: (504) 271-1658
       Fax: (504) 279-2874
       djarrell@stbda.org
       Attorney for petitioner SBPSB