### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**THE ST. BERNARD PARISH**
**SCHOOL BOARD**                                **CIVIL ACTION NO: 24-1952**

**VERSUS**                                       **JUDGE ELDON E. FALLON**

**THE BOARD OF COMMISSIONERS**                   **MAGISTRATE JUDGE MICHAEL**
**OF THE PORT OF NEW ORLEANS**                   **NORTH**

### ORDER & REASONS

Before the Court is a motion to remand filed by Plaintiff, St. Bernard Parish School Board. R. Doc. 9. Defendant, Board of Commissioners of the Port of New Orleans, opposes the motion. R. Doc. 14. Plaintiff replied. R. Doc. 15. The parties presented oral argument on October 2, 2024. Considering the record, the briefing, the parties' arguments, and the applicable law, the Court now rules as follows.

### I.    BACKGROUND

This case arises from Defendant's proposed construction of the Louisiana International Terminal ("LIT"), a shipping container storage facility, in St. Bernard Parish. R. Doc. 1-1. Plaintiff alleges that Defendant intends to build the "massive industrial facility" either on top of or completely encircling the site of the operational W. Smith, Jr. Elementary School (the "School"). *Id.* at 5. Either option, Plaintiff avers, would have devastating consequences for students at the school. *Id.*

Plaintiff alleges that the Port of New Orleans has spent approximately $53 million over several years to acquire six parcels of land for the LIT facility site. *Id.* at 28-30. However, Plaintiff contends that despite all of Defendant's efforts to secure the site, Defendant failed to acquire the site of the School. *Id.* at 5. Plaintiff alleges that "all known renderings" of the LIT were produced

1

"on the implicit assumption that [the School] would somehow be removed." *Id.* at 3. Further, Plaintiff contends that it is impossible for Defendants to acquire the School site because (1) Louisiana law prevents Plaintiff from selling the site of an operational school and (2) the property is "not subject to expropriation under Louisiana law." *Id.* at 4.  Plaintiff alleges that Defendant has alternatively "threatened to build the terminal around the school." *Id.* at 34. However, Plaintiff alleges that this preposterous plan would essentially involve "encirclement" of an elementary school with a massive industrial container facility. *Id.* at 5.  The diesel emissions from such a facility would, it alleges, cause students to experience asthma, cancer, heart attacks, sluggishness, cognitive defects, death, and stress. *Id.* at 45.

Accordingly, Plaintiff brought the instant suit in the 34th Judicial District for the Parish of St. Bernard to enjoin any further development of the LIT facility. *Id.* at 1. Plaintiff brings only one claim: nuisance under Louisiana Civil Code Articles 667-669. *Id.* at 6, 38-44. It alleges that this claim "do[es] not require an allegation of a separate source of duty;" rather, the "proprietor's duty to his neighbors is established by the Code itself, and it stems from the nature of the parties' relationship as neighbors." *Id.* at 40. Plaintiff also cites several cases where courts found impermissible nuisances. *Id.* at 43. Overall, Plaintiff requests a "Preliminary and Permanent Injunction" "enjoining defendant from any construction or construction related activities related to the [LIT] within 2,500 feet of W. Smit, Jr. Junior Elementary School. *Id.* at 47, 49.

Defendant removed the case to this Court on August 6, 2024. R. Doc. 1. It claimed that the construction-related activities Plaintiff seeks to enjoin "include those activities under the jurisdiction of the United States Army Corps of Engineers ("USACE"), including, for example, permit MVN-2021-00270-EG." *Id.* at 2. Further, Defendant noted that it has "pending applications for permits under Section 10 of the Rivers and Harbors Act and Section 404 of the Clean Water Act." *Id.* Defendant claimed that Plaintiff's suit "seeks to circumvent both the federal forum and

federal process under the Administrative Procedure Act." *Id.* Accordingly, Defendant argued that Plaintiff's suit "directly raises issues of federal preemption." *Id.* at 3.

## II.    PRESENT MOTION

Plaintiff moves to remand this suit back to Louisiana state court. R. Doc. 9. Overall, it contends that this Court does not have federal question jurisdiction over the case because the only claim Plaintiff brings is a state-law claim for anticipatory nuisance, the resolution of which will not require analysis of federal law. R. Doc. 9-1 at 24.

Plaintiff first argues that the only permit related to the LIT that Defendant has disclosed is a "testing permit" limited to the following:

> Clear for access and spoil/vegetation stockpile areas for geotechnical field exploration activities to include a total of twenty-seven (27) soil borings, sixty (60) Cone Penetration Tests, and approximately twelve-thousand (12,000) linear feet of Electrical Resistivity Testing.

*Id.* at 10. It avers that "[n]o permit has been issued for the construction of the LIT facility and it appears that one could not be issued since Port NOLA has not even submitted the baseline documentation required for its environmental review that would trigger the commencement of the public comment period." *Id.* Plaintiff argues that because there is currently no federal permit for the LIT facility, Defendant's suggestion that analysis of the federal permitting process will be crucial to the instant lawsuit is speculative. *Id.* Accordingly, Plaintiff contends that "any removal based on a federal question is premature." *Id.* at 11.

Moreover, Plaintiff contends that because it is only bringing a state-law claim for anticipatory nuisance—the outcome of which will depend on principles of ownership arising from the Louisiana Civil Code—its suit will not turn on whether Defendant is in compliance with its federal testing permit. *Id.* at 22. Plaintiff contends that to create federal question jurisdiction, a plaintiff's state-law claim must "rely on a duty that does not otherwise exist under state law."

3

Plaintiff argues that the *only* duty it relies on in its petition is "the duty of one neighbor to another under the [state] nuisance laws." *Id.* Plaintiff represents that it "does not seek to enjoin the permitted testing activity based on any standard of care or criteria set forth under either the Rivers and Harbors Act or the Clean Water Act." *Id.* at 20.

Defendant opposes the motion. R. Doc. 14. It contends that Plaintiff's suit necessarily raises a federal question because "to find that the Port's permitted conduct is a nuisance under the Nuisance Articles and thereby grant the requested injunctive relief, the Court must either find the USACE permit is invalid (such that the Port's conduct is not permitted) or the Port is not in compliance with that permit (such that the Port's conduct violates the relevant standard of care)." *Id.* at 11. Defendant makes several arguments as to why its compliance with its federal permit will be a critical aspect of any nuisance inquiry. *Id.* First, it contends that Louisiana courts have held that a nuisance claim for monetary damages "requires a showing of negligence." *Id.* Defendant thus reasons that the Court will need to determine whether its conduct met the applicable standard of care to decide the suit. *Id.* And, Defendant contends, the 'testing permit' establishes this standard of care. *Id.* at 13.

Second, Defendant argues that the Court will need to analyze whether it has met its obligations under the federal permit because the Plaintiff brings a nuisance claim for "inconvenience" under Louisiana Civil Code Article 668. *Id.* at 12. Defendant contends that Louisiana law on "inconvenience" requires landowners to tolerate "some inconvenience from the ***lawful use*** of a neighbor's land." *Id.* Accordingly, Defendant argues that the Court will need to determine if Defendant's actions were lawful, in that they complied with the testing permit, to decide this issue. *Id.* at 13. It avers that "the USACE permit is the 'only' source defining the port's lawful use of the Property at present." *Id.* Accordingly, Defendant argues that Plaintiff's nuisance claims "rel[y] on standards and duties arising from federal law." *Id.* at 14.

4

Next, Defendant argues that not only must the Court decide these federal issues, the issues are "actually disputed" because (1) the School Board admits that the permitted activities are necessary to avoid the "ripeness issue" faced in the previous suit to enjoin the LIT, (2) the testing permit is the only permit at issue, and (3) there is no other permitted activity underway. *Id.* Accordingly, it avers that "this dispute turns on whether the Port's activities under the USACE 'testing permit' (or the permit itself) are proper." *Id.* at 15.

Next, Defendant contends that the disputed federal issues are "substantial" because suit is "a collateral attack on an entire regulatory scheme . . . premised on the notion that [the scheme] provides inadequate protection." *Id.* at 16. It avers that Plaintiff's suit is an "attempted end-run on the federal regulatory process" of notice and comment rulemaking and permitting. *Id.* Similarly, Defendant argues that the exercise of federal jurisdiction will not infringe on state responsibilities because there is an important nation interest in the federal regulatory scheme. *Id.* at 18.

Finally, Defendant also argues that the doctrine of "complete preemption" applies in this case. *Id.* at 19. This doctrine holds that a federal court may exercise federal question jurisdiction over a claim where Congress "by statute completely preempts a particular area such that any civil complaint raising the select group of claims is necessarily federal in character." *Id.* at 19-20. Defendant contends that the Plaintiff's state-law nuisance claim is "preempted by the APA" because Plaintiff is attempting "to shut down the federal permitting process at the outset." *Id.* at 21. It contends that other cases holding that federal environmental statutes do not completely preempt state-law claims are not on point because Plaintiff is not seeking to "enforce" Defendant's obligations under a federal permit but rather is to "halt the entire federal permitting process." *Id.*

Plaintiff replied. R. Doc. 15. Plaintiff contends that the existence of a "'duty of care that does not otherwise exist under state law' is the critical threshold and that threshold has not been established in this case." *Id.* at 6 (citing *Board of Commissioners*, 850 F.3d 714, 723 (5th Cir.

2017)). This is because "the Petition does not rely upon a single federal law or federal standard of care to support its nuisance claim." *Id.* at 1. It argues that the Supreme Court unequivocally held that the Clean Water Act does not preempt state nuisance law in *International Paper Co. v. Ouellete*, 479 U.S. 481 (1987). *Id.* Accordingly, Plaintiff argues that Defendant "seeks to reimagine the Petition" as "not really seeking injunctive relief to enjoin the anticipated nuisance of a port facility, but rather is seeking injunctive relief to halt a federal permitting process." *Id.* at 3. Moreover, Plaintiff contends that the permit itself does not even establish a standard of care but merely allows some testing activities. *Id.* at 8. Further, the permit explicitly states that it "does not authorize any injury to the property or rights of others." *Id.* Finally, as to Defendant's argument that complete preemption applies, Plaintiff maintains that "this is patently false." *Id.* at 4. It notes that the Clean Water Act plainly does not displace other regulatory systems. *Id.* at 5.

## III.   LAW AND ANALYSIS

### A.  Whether a Federal Issue is Necessarily Raised

Pursuant to 28 U.S.C. § 1441, a defendant may remove an action from state court to federal court if the action is one over which the federal court possesses original jurisdiction. District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. 1331. Cases "arise under" federal law in one of two ways. First, federal question jurisdiction is invoked when a plaintiff pleads a cause of action created by federal law. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Second, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

6

The Fifth Circuit has held that federal question jurisdiction only exists when a plaintiff's state-law claim "cannot be resolved without a determination whether [] federal statutes create a duty of care that does not otherwise exist under state law." *Board of Commissioners*, 850 F.3d at 734. In *Board of Commissioners v. Tennessee Gas Co.*, the Court held that Plaintiff's negligence and nuisance claims necessarily raised federal issues. *Id.* There, the plaintiff sued oil and gas companies for dredging canals which it alleged eroded the coastline and threatened the levy system. *Id.* Although the plaintiff only asserted state law causes of action, it alleged in its petition that the defendant was violating federal laws. *Id.* The Fifth Circuit upheld the district court's decision that federal question jurisdiction existed. *Id.* at 723. It noted that:

> Defendants correctly point out that the Board's complaint draws on federal law as the exclusive basis for holding Defendants liable for some of their actions, including for the "unauthorized alteration" of federal levee systems and for dredging and modifying lands away from their "natural state." Unless Louisiana state law requires persons engaged in oil and gas activities to restore dredged or modified areas to their "natural state" to the identical extent that the CWA purportedly does, then a court would not be able to establish the magnitude of any potential liability without construing that Act.

Accordingly, the court concluded that the Plaintiff's claim necessarily raised a federal issue. *Id.*

Conversely, "[i]t is well-settled within this Circuit that when a plaintiff fails to affirmatively allege a federal claim, 'anticipated or potential defenses, including defenses based on federal preemption, do not provide a basis for federal question jurisdiction.'" *Bernstein v. Atl. Richfield Co.*, No. 15-630, 2015 WL 3454740, at *2 (E.D. La. May 29, 2015) (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008)). Thus, "merely suggesting that a defense may be raised that defendants were in compliance with federal regulations does not give rise to federal question jurisdiction." *See Riehm v. Wood Res.*, LLC, No. 16-12747, 2016 WL 6123372, at *4 (E.D. La. Oct. 20, 2016) (summarizing with approval *Gilbert v. Synagro Cent.*, LLC, No. 8-1460, 2008 WL 4542248, at *2-4 (E.D. Pa. Oct. 9, 2008)).

For example, in *Riehm v. Wood Resources, LLC*, this Court held that Plaintiffs' state-law

negligence and nuisance claims did not "necessarily raise" a federal question. *Id.* There, plaintiff homeowners alleged that the defendants' nearby "sand dredging" operations contaminated their property. *Id.* Although the plaintiffs only brought state-law claims, they alleged in their complaint that Defendants were in "flagrant violation of . . . federal laws, as well as the terms of their own licenses and permits with various government authorities." *Id.* at *3. The Court remanded. *Id.* It noted that "Plaintiffs' state court petition does not argue that federal regulations and statutes establish the duties owed by Defendants . . . . Rather, Plaintiffs' petition alleges that Defendants breached duties imposed under Louisiana law." *Id.* at 4. Even though the plaintiffs did reference violations of federal law in their complaint, the Court noted that "Defendants may owe a duty to Plaintiffs under Louisiana Civil Code Articles 667-679 . . . whereas the Court in *Board of Commissioners* conclusively determined that the defendants did not have an independent duty under Louisiana law." *Id.* The Court observed that "it was Defendants who raised the issue of federal standards, which appears more like the defense of preemption . . . [f]urther, simply because Defendants may have been in compliance with their federal permits does not necessarily mean that they were in compliance with state laws and local ordinances." *Id.* at n.2.

The Court finds that the instant suit does not "necessarily raise" a federal issue. The only claim Plaintiff brings is a state-law nuisance claim. As recognized in *Riehm*, Louisiana nuisance law provides its own standard for holding a defendant liable for improper use of property. *Id.* These articles "establish specifically responsibility for damage to property and persons in the context of neighborhood, namely, under rules of property law." *Slocum v. Int'l Paper Co.*, No. CV 16-12563, 2022 WL 35429, at *10 (E.D. La. Jan. 3, 2022). Furthermore, "unlike their article 2315 general-negligence claims, plaintiffs' nuisance claims do not require an allegation of a separate source of duty. The proprietor's duty to his neighbors is established by the Code itself, and it stems from the nature of the parties' relationships as neighbors." *Ellis v. Evonik Corp.*, 604 F. Supp. 3d 356, 376

(E.D. La. 2022). Accordingly, Plaintiff's petition does not "draw[] on federal law as the exclusive basis for holding Defendants liable," as is necessary to establish federal question jurisdiction. *Board of Commissioners*, 850 F.3d at 734. Instead, Plaintiff explicitly relies on a state-law duty based in Louisiana property law and arising "from the nature of the parties' relationship as neighbors" as a basis for liability. *Ellis*, 604 F. Supp. 3d at 376.

Far from being the "exclusive basis" for relief, federal law is *not even mentioned* in Plaintiff's petition. In *Riehm*, the plaintiffs alleged in their petition that the defendants were violating "federal laws, as well as the terms of their own licenses and permits with various government authorities." 2016 WL 6123372, at *3. Even that allegation was insufficient to necessarily raise a federal issue. *Id.* at *4. Here, Plaintiff does not argue that Defendant is violating any duties under the federal regulatory statutes, nor does it contend that Defendant is in violation of any federal permits. Accordingly, the instant case presents an even weaker case for federal jurisdiction than *Riehm*, where the Court remanded.

Defendant contends that in deciding this case, a Court will have two options: it must "either find the USACE permit is invalid (such that the Port's conduct is not permitted) or the Port is not in compliance with that permit (such that the Port's conduct violates the relevant standard of care)." R. Doc. 14 at 11. The Court disagrees that these are the only two options. In deciding this case, a Court could simply ignore the permit and decide whether Defendant's conduct is prohibited under nuisance principles derived from the Louisiana Civil Code. This is, in fact, what Plaintiff requests in its petition. Of course, the Defendant is free to argue that the deciding Court must not ignore the permit because the USACE's authority to grant the federal permit preempts state nuisance law. But that argument is precisely the kind of "defense[] based on federal preemption" that is insufficient to establish federal question jurisdiction. *See Bernstein*, 2015 WL 3454740, at *2.

Furthermore, even if the Court was persuaded that Plaintiff's suit "necessarily raised" the

9

issue of the "validity" of the permit, or Defendant's "compliance" with the permit, these issues are not "actually disputed" as is required to establish federal question jurisdiction. *Gunn*, 568 U.S. at 258. Plaintiff does not challenge Defendant's compliance with its permit, nor does it challenge the USACE's authority to issue the test permit. The parties also do not raise any disagreements about the requirements of the Clean Air Act, Clean Water Act, or Rivers and Harbors Act. Plaintiff does not contend that Defendant is in violation of any requirement of those acts. The only potential dispute of federal law the parties raise is whether the federal permit preempts state nuisance law which, as explained, cannot create jurisdiction. *Bernstein*, 2015 WL 3454740, at *2.

Finally, the Court notes that any doubt about the propriety of removal must be resolved in favor of remand. *Gasch*, 491 F.3d at 281-82. At the very least, this suit certainly presents "doubts" as to the propriety of removal. Accordingly, remand is proper. *Id.*

### B. Whether the State Suit is "Completely Preempted"

As discussed, "a defense rooted in federal law, even the defense of preemption, cannot confer federal jurisdiction." *Ford v. Murphy Oil U.S.A., Inc.*, 750 F. Supp. 766, 772 (E.D. La. 1990). However, "[o]ne exception does exist: when the preemptive force of the federal law in question 'is so extraordinary that it converts' the state law claim in the petition 'into a federal claim for the purposes of the well-pleaded complaint rule' federal jurisdiction may well exist." *Id.* (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)). "Complete preemption must be distinguished from defensive preemption,'" which "does not create federal question jurisdiction" but "simply declares the primacy of federal law, regardless of the forum or the claim." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).

The Fifth Circuit has held that in order to establish complete preemption, the defendant must show that: (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional

10

grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that the federal action be exclusive. *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008). Complete preemption is rare: "[t]he Supreme Court has only found complete preemption in three areas: the usury provisions of the National Bank Act, the Employee Retirement Income Security Act of 1974 and the Labor Management Relations Act." *Cantrell v. Briggs & Veselka Co.*, No. - 14-509, 2014 WL 6900846, at *2 (S.D. Tex. Dec. 5, 2014).

In *International Paper Co. v. Ouellette*, the Supreme Court held that the Clean Water Act does not preempt state-law nuisance claims. 479 U.S. 481 (1987). Similarly, the Clean Air Act does not completely preempt state claims. *Cerny v. Marathon Oil Corp.*, No. 13-562, 2013 WL 5560483, at *8 (W.D. Tex. Oct. 7, 2013) (concluding, after a review of nation-wide case law, that the Clean Air Act does not completely preempt state nuisance law). Accordingly, to the extent that Defendant contends that these regulatory statutes preempt Plaintiff's claims, this argument is meritless.

Defendant also argues that "the claims are preempted by the APA." R. Doc. 14 at 21. However, Defendant does not cite—nor could the Court identify—a single case holding that the availability of APA review precludes a plaintiff from bringing a state-law nuisance claim regarding a federally permitted project. Defendant cannot explain how the APA meets any of the three factors required by the Fifth Circuit to find complete preemption. *Gutierrez*, 543 F.3d at 252.  Moreover, the incredibly broad holding Defendant seeks—that the availability of APA review of federal permits completely preempts state law nuisance claims—would be inconsistent with *Ouellette* and the narrow standard for complete preemption.

The Court understands Defendant's position that Plaintiff should be required to operate within the APA review process rather than requesting an injunction before that process has begun. However, this argument goes to a prematurity defense on the merits rather than a jurisdictional

argument on a motion to remand. While Defendant is free to make this argument in state court, it is unavailing as to the instant jurisdictional issue.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion to remand, R. Doc. 9, is **GRANTED.**

New Orleans, Louisiana, this 8th day of October, 2024.

HONORABLE ELDON E. FALLON